## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-IA-00617-SCT

*STATE OF MISSISSIPPI, STEPHANIE TIMMONS AND MIKE TIMMONS*

*v.*

*ADAMS COUNTY CIRCUIT COURT*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/1997 |
| TRIAL JUDGE: | HON. LILLIE BLACKMON SANDERS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | EMILY HAXTON |
| | EILEEN M. MAHER |
| | THOMAS L. ROSENBLATT |
| ATTORNEY FOR APPELLEE: | LAWRENCE A. SCHEMMEL |
| DISTRICT ATTORNEY: | RONNIE L. HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/25/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Stephanie and Mike Timmons were indicted during the January, 1997, Term in Adams County Circuit Court in Cause Number 10,953 for possession of more than one ounce and less than one kilogram of marijuana. The Timmonses were also indicted during the same term in Cause Number 10,954 for possession of cocaine within a church zone and possession of crystal methamphetamine within a church zone. As part of a plea bargain, the State agreed to retire the charges in Cause Numbers 10,953 and 10,954 in exchange for the couple pleading guilty to a separate set of charges in Cause Number 10,843. At a March 24, 1997, hearing before Circuit Court Judge Forrest A. Johnson, Jr., Mrs. Timmons pled guilty to sale of less than one ounce of marijuana and possession of more than one kilogram of marijuana in Cause Number 10,843. Mr. Timmons pled guilty to possession of more than one ounce, but less than one kilogram of marijuana in Cause Number 10, 843. Judge Johnson sentenced Mrs. Timmons to three years and a $1,000 fine for sale of marijuana and three years and a $1,000 fine on the possession charge, the sentences to run concurrently, plus all court costs. Mr. Timmons received a three-year suspended sentence and a $1,000 fine with a five-year probation period for possession of more than an ounce, less than a

kilogram of marijuana.

¶2. On May 9, 1997, Circuit Court Judge Lillie Blackmon Sanders heard the State's motion to dismiss the charges in Cause Numbers 10,953 and 10,954. Judge Sanders denied the State's motion and ordered that the case proceed to trial. Again, on May 13, 1997, District Attorney Ronnie L. Harper appeared before Judge Sanders requesting that she reconsider the State's motion to nolle prosequi the two indictments. Judge Sanders explained that she would not sign an order dismissing charges before her based upon a plea agreement made in another judge's court of which she was not made aware, particularly considering the light sentence given as a result of the guilty pleas. She proposed instead that the district attorney have the guilty pleas before Judge Johnson set aside. Judge Sanders also suggested that the reason the State was willing to dismiss the charges against the Timmonses was because they were white. In her May 13, 1997, order, Judge Sanders denied both the State's motion to dismiss and its request for interlocutory appeal.

¶3. On May 14, 1997, the trial date set in this case, Judge Sanders refused to reconsider her decision after discussion with the attorneys in chambers. She required District Attorney Harper to appear in court, where he declared that the State was not able ethically and legally to proceed based upon the previous plea agreement. Judge Sanders announced that she would request a prosecutor from the Attorney General's Office to proceed with the case.

¶4. We granted the State's motion for interlocutory appeal and entered an order staying the prosecutions. On appeal the State assigns as error the following:

**I. A DISTRICT ATTORNEY HAS BROAD DISCRETION IN HANDLING CRIMINAL PROSECUTIONS AND MAY DISMISS INDICTMENTS AGAINST A DEFENDANT AS PART OF A PLEA AGREEMENT. THESE PLEA NEGOTIATIONS UNDER THE CONTROL OF THE DISTRICT ATTORNEY SHOULD NOT BE INTERFERED WITH BY THE COURT OUT OF RESPECT FOR SEPARATION OF POWERS.**

**II. THE "CONSENT OF COURT" REQUIRED FOR A NOLLE PROSEQUI BY MISSISSIPPI CODE ANNOTATED § 99-15-53 SHOULD NOT BE UNREASONABLY WITHHELD. EVEN THOUGH THE STATUTE DOES NOT REQUIRE THE STATE TO "SHOW CAUSE," THERE WAS ABUNDANT CAUSE IN THIS CASE FOR THE COURT TO APPROVE THE DISMISSAL.**

**III. BECAUSE THE TIMMONS DEFENDANTS RELIED ON THE PROMISE OF THE STATE TO DISMISS OTHER CHARGES AGAINST THEM, THEY CANNOT NOW BE PROSECUTED ON THOSE CHARGES.**

¶5. These three assignments essentially boil down to one issue: whether the trial judge abused her discretion in refusing the motion for nolle prosequi relied upon by the prosecutor and the defendant in reaching a plea agreement in this case. We find that the district attorney's failure to obtain prior court approval for the plea agreement in this case was error. However, once the Timmonses relied upon the plea agreement to their detriment by entering their guilty pleas, both the district attorney and the trial court were bound to uphold the State's end of the agreement by dismissing the charges in Cause Numbers 10,953 and 10,954. Therefore, we hold that Judge Sanders abused her sound judicial discretion by denying the State's motion to nolle prosequi the two indictments in these cases.

## STATEMENT OF THE LAW

### I.

### WHAT IS THE EXTENT OF THE TRIAL JUDGE'S AUTHORITY IN DECIDING WHETHER TO GRANT A MOTION FOR NOLLE PROSEQUI RELIED UPON DURING PLEA NEGOTIATIONS BETWEEN THE PROSECUTOR AND THE DEFENDANT?

¶6. Both the State and the circuit court agree that § 99-15-53 is the primary authority in this case:

> A district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, without the consent of the court; and, except as provided in the last preceding section, it shall not be lawful for any court to dismiss a criminal prosecution at the cost of the defendant, but every cause must be tried unless dismissed by consent of the court.

Miss. Code Ann. § 99-15-53 (Rev. 1994). The issue presented is the extent of the trial judge's authority in granting or denying the court's consent. The State maintains that the consent of the court should not be withheld without just cause. Its position is that district attorneys should be allowed wide discretion in deciding which cases to prosecute and in conducting plea negotiations. The State also argues that because the defendants detrimentally relied upon the plea agreement to nolle prosequi these causes, further prosecution is legally and ethically barred.

¶7. "The state, whether it be through the prosecutor, the trial judge, or both, is bound by its plea-bargain agreement with a defendant who pleads guilty pursuant to the agreement." *Salter v. State*, 387 So. 2d 81, 83 (Miss. 1980).

> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons.

> However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor.

> . . . [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Santobello v. New York*, 404 U.S. 257, 261-62 (1971).

¶8. Generally speaking, a trial court is not bound to accept a defendant's guilty plea or enforce a plea agreement reached between the prosecutor and defendant. *Moody v. State*, 716 So. 2d 592, 594 (Miss. 1998). "However, as we explained in *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989), when a 'trial court has discretion in a matter, [it is] impl[ied] that there is a limited right to be wrong.'" *Moody*, 716 So. 2d at 594 (footnote omitted). In *Moody*, we reversed the trial judge's refusal to accept the defendant's guilty plea and enforce the plea agreement, finding that the defendant detrimentally relied upon the terms of the agreement when he supplied the State with information and submitted to polygraph examinations. *Id*. at 592 & 595. We held that the reasons relied upon by the trial judge in rejecting the plea agreement (that he did not want the defendant to receive less than a death penalty and that the district attorney exceeded his authority in offering the plea bargain) were unreasonable and resulted in an abuse of discretion. *Id*. at 594-

95.

¶9. In *Edwards v. State*, 465 So. 2d 1085 (Miss. 1985), we reversed a conviction for extortion, because the defendant detrimentally relied upon his agreement with the district attorney. According to the terms of the agreement, the defendant "would resign his position as constable in exchange for immunity from prosecution." *Id*. at 1085. Applying § 99-15-53, we held that the district attorney lacked authority to enter into the agreement with the defendant and further erred in failing to move to nolle prosequi. *Id*. at 1086. We also recognized the sound discretion given to trial judges in deciding whether to ratify plea agreements. *Id*. However, based upon the defendant's detrimental reliance on the agreement when he resigned his position, we held that the trial court abused its discretion in denying the defendant's motion to quash the indictment. *Id*.

¶10. In *Danley v. State*, 540 So. 2d 619 (Miss. 1988), we reversed a murder conviction based upon the district attorney's improper unilateral decision to rescind a plea agreement with the defendant. Under the agreement, the defendant was to provide the prosecutor with information regarding the murder in exchange for the State's recommendation that the defendant be tried under a reduced charge. *Id*. at 621. The prosecutor suspected that the defendant had breached their agreement by giving him misinformation and, therefore, decided to rescind the plea agreement and proceed with the murder charge. *Id*. at 621-22. In analyzing the application of § 99-15-53 to the case, we stated, "There is no indication in the record that the district attorney ever sought the approval of the trial court before reaching the plea bargain agreement with Danley. The more serious error in this case however, was the unilateral decision by the district attorney to rescind the memorandum of understanding." *Id*. at 622. We found that the defendant's detrimental reliance on the plea agreement required reversal, despite any failure by the district attorney to obtain prior court approval for the agreement. *Id*. at 623.

¶11. We find that the district attorney here erred in failing to gain Judge Sanders's approval of the plea agreement which involved the nolle prosequi of two cases before her. However, once the Timmonses detrimentally relied on the agreement by pleading guilty and testifying about their drug business at their plea hearing before Judge Johnson, Judge Sanders abused her discretion by refusing to grant the State's motion to dismiss. Although she did refer to the proportionally light sentence given to the defendants as part of her concern, a review of the record indicates that Judge Sanders was primarily agitated at what she perceived to be a usurpation of her judicial power. This was not a reasonable basis for refusing to uphold the plea agreement in this case.

¶12. The requirement of court approval for dismissal of a criminal action "is primarily intended to protect the defendant against prosecutorial harassment." *United States v. Hamm*, 659 F.2d 624, 628 (5th Cir. 1981) (en banc) (interpreting Rule 48(a) of the Federal Rules of Criminal Procedure) (footnote omitted). The only way to protect the rights of the defendants at this point is to reverse the decision of the circuit court and order dismissal of the charges in this case, per the plea agreement.

¶13. We reverse the judgment of the trial court and remand this case to the Adams County Circuit Court with specific instructions to dismiss with prejudice the indictments in Cause Numbers 10, 953 and 10, 954 on the criminal docket of the circuit court.

¶14. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., MILLS AND WALLER, JJ., CONCUR. BANKS, J.,**

**DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND SMITH, JJ. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

### BANKS, JUSTICE, DISSENTING:

¶15. The perception of usurpation of judicial power, if entertained by Judge Sanders, was right on target. There is simply no basis for a district attorney, or a circuit court, entering into an arrangement purporting to bind another court. In most of our judicial districts where there are multiple judges, a system of random assignment of cases has been established. We have found cause for disciplining judges who have violated the random assignment scheme by acting upon cases assigned to another without the consent of all concerned. *Mississippi Comm'n on Judicial Performance v. Gunn*, 614 So. 2d 387, 389 (Miss. 1993); *Mississippi Comm'n on Judicial Performance v. Chinn*, 611 So. 2d 849, 854 (Miss. 1992); *In re Hearn*, 515 So. 2d 1225, 1227 (Miss. 1987). *Compare Mississippi Comm'n on Judicial Performance v. Dodds*, 680 So. 2d 180, 197 (Miss. 1996) (holding that justice court judge who disposed of cases assigned to another judge did not interfere with the rotation of cases where the judges were in agreement). What happened here strikes a heavy blow to the system of random assignment. Because it does, I reluctantly dissent.

¶16. To be sure, it is not the Timmonses' fault but neither should they gain from such a procedure. The Timmons may be restored to "square one" without any loss to themselves or the system by simply allowing them to withdraw their pleas on the basis that the trial court to which the other cases were assigned did not approve of the *nolle prosequi*.

¶17. In my view, *Salter v. State*, 387 So. 2d 81, 83 (Miss. 1980), may be distinguished. Here, the original bargain failed to gain complete judicial approval. In *Salter* there was a bargain to drop certain charges, and they were in fact dropped. *Id.* Thereafter, first the state and then the court tried to reinstate those charges for reasons which did not affect the validity of the bargain. *Id.* That is simply not the case here.

¶18. Neither does *Moody v. State*, 716 So. 2d 592 (Miss. 1998), control. In addition to the prior irreversible reliance upon the bargain there, unlike in this case, the judge had no sentencing option. *Id.* at 595. He could not impose the death penalty, and the death penalty could be sought only if the district attorney pursued it. *Id.* The plea bargain bound the court to no more nor less than what the law required of it. The *Moody* trial court's withholding approval of a plea, then, was completely arbitrary.

¶19. Here the trial judge has a great deal of sentencing discretion. I agree with the majority that sentencing discretion should not be the sole basis for withholding approval of an otherwise valid plea agreement which requires a *nolle prosequi*. Nor should the power of approval be used to frustrate prosecutorial discretion concerning when to proceed with a given prosecution. In my view, however, the prophylactic effect of what was done here is sufficient justification for it. A trial court should not be held hostage to a bargain struck elsewhere. Judge shopping has potential dangers for the fair administration of justice. One way to stop the practice is to avoid rubber stamping its result.

¶20. For the foregoing reasons, I would affirm the decision of Judge Sanders.

**McRAE AND SMITH, JJ., JOIN THIS OPINION.**


      **SMITH, JUSTICE, DISSENTING:**

¶21. Most recently, this Court addressed detrimental reliance upon a plea bargain in ***Moody v. State***, 716 So.2d 592 (Miss. 1998). There, this Court said:

> We conclude that Moody is correct in arguing that he is entitled to have the plea agreement enforced for two reasons. One, the trial court clearly abused its discretion in flatly refusing to accept Moody's pleas of guilt based solely upon the reasons indicated in the record. Two, Moody did indeed detrimentally rely on the agreement by substantially performing many of the terms of the agreement **before** the trial court refused to accept the guilty pleas and enforce the agreement. As Moody argues, his detrimental reliance and performance of the terms of the agreement mandate that the agreement be enforced.

*Id.* at 594 (emphasis in original). Moody detrimentally relied on the agreement when he (1) gave several statements to the State about his and others' participation and involvement in the various murders; (2) fully disclosed all information and knowledge he possessed about the charged crimes, as well as another murder; (3) buttressed the credibility of his statements by submitting, satisfactorily, to lie detector tests; and (4) made himself available to testify against the co-defendants charged with the crimes. *Id.* at 593.

¶22. Furthermore, in ***Moody***, this Court designed the proper standard for a trial court to follow in determining whether detrimental reliance upon a plea agreement has occurred, as follows:

> We recognize that a criminal defendant has no absolute right to have his guilty plea accepted by a trial court. A trial judge may decline to accept such a plea in the exercise of sound judicial discretion. Miss. Code Ann. § 99-15-53 (1994); ***Martin v. State***, 635 So.2d 1352 (Miss.1994). However as we explained in ***Burkett v. Burkett***, 537 So.2d 443, 446 (Miss.1989), when a "trial court has discretion in a matter, [it is] impl [ied] that there is a limited right to be wrong." When reviewing a decision that is within a trial court's discretion, the first question we ask is if the court applied a correct legal standard. ***Id.*** (*citing **Detroit Marine Engineering v. McRee***, 510 So.2d 462, 467 (Miss.1987); ***Croenne v. Irby***, 492 So.2d 1291, 1293 (Miss.1986)). If a correct legal standard was applied, the next question is whether the trial court's "decision was one of those several reasonable ones which could have been made." ***Burkett***, 537 So.2d at 446 (emphasis added).

716 So.2d at 594.

¶23. Therefore, under the ***Moody*** analysis, the first question in the case *sub judice* is whether the trial court applied the proper legal standard. The correct legal standard was applied by Judge Sanders in exercising her discretion under Miss. Code Ann. § 99-15-53 (1994). The second question is whether that decision was one of the several reasonable ones possible. The Majority thinks that it was not. Maj. Op. at 5.

¶24. The ultimate legal question is then whether the Timmonses did in fact detrimentally rely upon the plea agreement. In ***Salter v. State***, 387 So.2d 81 (Miss.1980), we held: "The state, whether it be through the prosecutor, the trial judge, or both, is bound by its plea bargain agreement with a defendant who pleads

guilty pursuant to the agreement." *Id.* at 83. Moreover, in *Salter*, this Court held that the state was bound by its agreement with Salter to nolle pros eight indictments against Salter after he pled guilty to two others. *Id.* at 84.

¶25. In the case *sub judice*, the plea agreement with the Timmonses stated that the State would retire two charges in exchange for the couple pleading guilty to two other charges. The Timmonses complied and pled guilty to two charges before Judge Johnson. Subsequently, Judge Sanders denied the State's motion to dismiss on other charges which were assigned to her, pursuant to the plea bargain. Therefore, under *Salter*, it appears at first blush that the Timmonses have detrimentally relied upon the plea bargain.

¶26. However, both *Moody* and *Salter* are factually distinguishable despite the Majority's claims otherwise. The key distinguishing fact in the case *sub judice* is that two circuit judges were involved, and the district attorney only got prior consent for the plea bargain from one of them, Judge Johnson. This is an important distinction, because Section 99-15-53 specifically states that "[a] district attorney, or other prosecuting attorney, **shall not** compromise any cause or enter a nolle prosqui either before or after indictment found, **without consent of the court** . . . " Miss. Code Ann. § 99-15-53 (1994) (emphasis added). It is undisputed that the district attorney did not have the consent of Judge Sanders on the two charges pending before her. Because of the district attorney's inexcusable lapse, Judge Sanders was placed in a very awkward position before a jury ready to try the Timmonses. In reality, there was no plea bargain here because Judge Sanders never approved the district attorney's recommendation. Nor have the Timmons detrimentally relied on the agreement as in *Salter* or *Moody*. Therefore, they can simply be allowed to withdraw their pleas and put back in their original prior position. (*See Lanier v. State*, 635 So. 2d 813, 818-19 (Miss. 1994)(defendant's plea bargain contract to life without parole was void as against public policy and in violation of the statute, thus, on remand defendant is put back in original prior position subject to death penalty or life imprisonment).

¶27. Furthermore, the Majority is overly critical and insensitive to her plight in stating that Judge Sanders was "agitated at what she perceived to be a usurpation of her judicial power." Maj. Op. at 7. Rather than a "perception" of usurpation, here there was a clear disregard by the district attorney for the statutory mandate. The facts relating to Judge Sanders's role in this case clearly demonstrate my point.

¶28. The record indicates that Judge Sanders was informed previously by the district attorney that his office would no longer plea bargain with criminal defendants. Moreover, according to Judge Sanders, the district attorney had previously tried to do the same thing, ". . . and it has happened before, where the district attorney without my consent, without informing me, enters into agreements with parties to dismiss cases and to Nolle Pros cases. And this Court told them then when they did it before not to do it again."

¶29. In circumstances such as these where several criminal charges are presented against defendants in the same circuit court but before different circuit judges, Section 99-15-53 requires the district attorneys of this state to obtain the prior consent of all judges whose dockets will be affected by the plea arrangements. The district attorney here failed in this responsibility and rightfully incurred the wrath of Judge Sanders for what the district attorney incorrectly suggested was only an "administrative oversight." The circuit judges deserve more respect and certainly more notice.

¶30. Accordingly, I respectfully dissent.

**BANKS, J., JOINS THIS OPINION.**