770 So.2d 542 (2000)
Timothy Edwards MYERS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-CA-00923-COA.
Court of Appeals of Mississippi.
November 7, 2000.
*543 Richard C. Conant, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
EN BANC:
SOUTHWICK, P.J., for the Court:
¶ 1. Timothy Edwards Myers pled guilty in 1996 to kidnaping. In 1999 he sought to withdraw his guilty plea, but the trial court denied relief. On appeal Myers argues that no factual basis for his crime was shown at the plea hearing and that he was not informed of the proper maximum and minimum sentences. Additionally, Myers argues that the prosecution breached the plea bargain agreement and that he received ineffective assistance of counsel. We find that the only meritorious issue concerns the prosecution's failure to comply with its plea agreement. We reverse the sentence imposed and remand for a new sentencing hearing before a different judge, with the State this time fulfilling its part of the agreement.

FACTS
¶ 2. Myers was indicted for kidnaping a seven year old girl from the parking lot of a store in Pascagoula. He agreed to take the girl in his van to her nearby home, but instead took her to Mobile, Alabama. Myers talked by telephone to a police detective about ransom money, believing that he was talking to the girl's family. As a result of the conversation, Myers went to a rest stop on the interstate highway to pick up the ransom, having just dropped the girl off at another location. He was met by police officers, and the girl was soon found. He was indicted for kidnaping and for felony child abuse. Due to a mistake in the child abuse count, a nolle prosequi order was entered on that charge. The one charge on which guilt was found and a sentence imposed was this:
Timothy Edward Myers, ... on or about September 23, 1995, did ... feloniously, willfully and without lawful authority forcibly seize and confine or inveigle [his victim] with the intent to cause [her] to be secretly confined or imprisoned against her will....
*544 ¶ 3. After jury selection began, a plea agreement was reached between the State and Myers. At the plea hearing both the prosecutor and defendant explained their understanding of the agreement. They agreed that Myers was pleading guilty to kidnaping in exchange for the other charges to be dropped and a sentencing recommendation of twenty-five years. It was understood that Myers would receive a sentencing hearing as he desired to convince the court to impose a lesser sentence. However, the State reserved the right to reinstate the other charges if a sentence of less than twenty-five years was entered.
¶ 4. Almost four months later the sentencing hearing was held. A different prosecutor, District Attorney Dale Harkey, was present who stated he did not know the specifics of an agreement and recommended the maximum of thirty years. That was the sentence imposed in December 1996.
¶ 5. In January 1999 Myers filed a petition for post-conviction relief. The relief was denied and Myers's appeal has been deflected to this Court.

DISCUSSION

1. Factual basis for guilty plea
¶ 6. In reviewing the quantum of evidence in this record, the Court focuses on the level of proof that applies to a guilty plea. After discussions involving himself, counsel, and the State, an accused may agree to plead guilty, which avoids the need for the State to present all the evidence that it has to a jury. However, the State is still obligated to present the evidence to the court. There are requirements that must be met, but we find them satisfied here.
¶ 7. What must have occurred for Myers to be guilty under this indictment is that he did "forcibly seize and confine or inveigle" the victim "with the intent to cause [her] to be secretly confined or imprisoned against her will." There is no suggestion of forcible seizing. An interpretative issue arises as to whether the word "forcibly" also applies to "confine" or potentially even to "inveigle." A review of the statute indicates that a person commits the offense if he does "forcibly seize and confine any other person, or shall inveigle or kidnap any other person with the intent to cause such person to be secretly confined" against her will. Miss.Code Ann. § 97-3-53 (Rev.2000). Inveigling has no component of force, but only of coaxing. One does not forcibly inveigle. Guilt exists if Myers coaxed the girl into his vehicle with the intent secretly to confine her against her will. See Williams v. State, 544 So.2d 782, 789 (Miss.1987)(explaining the elements of kidnaping).
¶ 8. Mississippi precedents indicate that the sufficiency of a guilty plea is not measured only by what the accused admitted. In fact, it is not necessary for the defendant to admit guilt in order for the plea to be accepted. Corley v. State, 585 So.2d 765, 767 (Miss.1991). What is needed is a voluntary and knowledgeable plea and an "independent evidentiary suggestion of guilt." Reynolds v. State, 521 So.2d 914, 917 (Miss.1988). Reynolds based its conclusion on a United States Supreme Court decision in which the accused denied guilt, stated that he was nonetheless pleading guilty knowingly and voluntarily because of the likelihood of conviction if he did not, and three witnesses provided evidence that would have been sufficient to support a conviction. Id. (citing North Carolina v. Alford, 400 U.S. 25, 38-39, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).
¶ 9. Therefore a plea may be accepted if there is enough evidence to satisfy the court before which the plea is offered that the State, if put to its proof, could demonstrate guilt. United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (cited in Corley, 585 So.2d at 767). The Court upheld a defendant's guilty plea even though in his petition he explicitly disclaimed guilt, but *545 agreed to accept a plea bargain under the authority of Alford. Brown v. State, 533 So.2d 1118, 1120 (Miss.1988).
¶ 10. Perhaps the least amount of proof supporting a guilty plea appeared in the most frequently cited of the relevant cases, Corley v. State, 585 So.2d 765. At the plea hearing the court asked the prosecutor to recount what he thought the State could prove.
In capsule form, Your Honor, the State case would show that Corley, together with another man, White, by prearrangement met Robert Eugene Parkerson on the 2nd of December, 1987, behind Prince's Drive-In North of Greenwood on Highway 7, within the jurisdiction of this Court; that after a conversation between Corley and Parkerson, Corley shot Parkerson with a large caliber handgun, causing his death.
Id. at 768. The court then asked, "Mr. Corley, does this substantially and in an abbreviated form describe the facts of the crime for which you enter this guilty plea?" The response was "Yes, sir. I didn't do the shooting, but I was there; but I didn't do the shooting." Id.
¶ 11. The Supreme Court relied upon the fact that "the District Attorney's summary of the prosecution's proof shows guilt and was made in Corley's presence." Id. Corley admitted that he was present but denied that he did the shooting. However, when Corley denied doing the shooting, there was nothing specific on which to base Corley's participation in a crime. He had made arrangements to meet the deceased and another man, but for what purpose is unstated. The court held "it fairly inferrable that, even taking Corley's version of the facts, Roger T. White shot and killed Parkerson under circumstances where Corley was an accessory before the fact." Id. An accessory before the fact must advise, direct, or encourage the criminal enterprise, but is not physically present. Malone v. State, 486 So.2d 360, 363 (Miss.1986). The principal difference between the accessory before the fact and an aider and abettor is the actual or constructive presence of the accused at the scene of the crime. Pleasant v. State, 701 So.2d 799, 803 (Miss.1997). Since Corley was present, it might be fair to say that the relevant inference was that he was an aider and abettor. Yet there was no admission by Corley, and no reference in the prosecutor's summary, that Corley had helped advise or encourage the enterprise nor took any action towards its completion.
¶ 12. Perhaps the inference arises since it would be unreasonable to assume that Corley was willing to plead guilty to murder if he and White had just planned to talk over some innocent social matter with White's victim. Still, it is possible that Corley did not understand that he had to have some knowledge of White's murderous intentions before being complicit. When he agreed with what the prosecutor said, he had not agreed to any knowledge of what the actual shooter was going to do. That did not trouble the Corley court. Though the details are never given as additional factual support for the plea, the court mentioned that at a preliminary hearing the prosecution presented what was called "substantial proof that Corley killed Parkerson." Id. at 767.
¶ 13. Substantial gaps in the evidence or admissions before a court are common in guilty pleas. Quite generally, it has been held that a "factual showing does not fail merely because it does not flesh out the details which might be brought forth at trial. Fair inference favorable to guilt may facilitate the finding." Corley, 585 So.2d at 767. A significant defect, if the perspective of trial evidence is erroneously taken, existed in the following plea that was nonetheless upheld:
Gazzier next argues that the trial judge should not have accepted his guilty plea in light of the fact that he only admitted to attempting to penetrate the victim, while a sexual battery charge requires actual penetration. Gazzier notes that Uniform Circuit and County Court Rule *546 8.04(A)(3) requires that a court determine that "there is a factual basis for the plea." The State correctly notes, however, that the law does not require that a defendant admit every aspect of a charge against him. Instead, a guilty plea will be considered valid even though the defendant makes only a "bare admission of guilt." Gaskin v. State, 618 So.2d 103, 106 (Miss.1993), see also Lott v. State, 597 So.2d 627 (Miss. 1992). In the view of this Court, Gazzier's statement at his guilty plea hearing that he had "attempted" to penetrate a thirteen-year-old girl constitutes a "bare admission of guilt" as set forth in Gaskin.
Gazzier, 744 So.2d at 779. Even without evidence of the necessary penetration, the plea was valid.
¶ 14. Myers similarly made an admission of the substantial elements of the charge against himhe was the person who took the girl and asked for ransom. The specifics of his then-plans were not detailed, but a bare, indeed, a substantial admission occurred.
¶ 15. Also of importance is that evidence to support the plea can be from matters outside what occurred at the plea hearing itself. The entire lower court record should be examined. Corley, 585 So.2d at 767. In Corley the testimony adduced at a preliminary hearing was added to what was said during the plea. Id. A prior hearing on a demurrer to the indictment provided usable evidence in Brown, 533 So.2d at 1124. The Court also has relied upon proceedings on an earlier indictment that contained sworn statements from two witnesses to the crime. Gaskin v. State, 618 So.2d at 106. In Gaskin, the Supreme Court held that what was presented at the plea hearing itself was insufficient, and then relied upon these prior affidavits to affirm the conviction. Id.
¶ 16. Myers admitted several things. He took the girl in his vehicle, but his "intentions were to help the child." He did not forcibly take her but had no one's permission to do so. He took her to Mobile, Alabama after picking her up in Pascagoula, Mississippi. He talked to a police detective about ransom money, believing that he was talking to the girl's family. He went to a rest stop on the interstate highway to acquire the ransom, having first dropped the girl off at another location. Later at his sentencing hearing he admitted that he told the girl in the parking lot that he would take her home since she did not live very far. Instead he took her from Pascagoula to Mobile where he made the call about ransom.
¶ 17. These remarks at the sentencing hearing are significant regarding intent at the time that he took the girl in his vehicle. They exceed being the necessary bare admission that he inveigled the girl to proceed with him. The precedents cited above require that the court look at the entire record to determine the factual basis for the plea. Matters from a prior indictment were used in Gaskin. Here, we are considering admissions after the plea. Under circuit court rules, Myers still could have filed a motion to withdraw the guilty plea at that time, though it would have been discretionary with the trial judge on whether to grant it. URCCC 8.04(A)(5). The Court finds that in light of the judge's continuing discretion regarding the plea that it is appropriate also to consider evidence presented to him at that time in evaluating the sufficiency of the factual basis.
¶ 18. Moreover, various Supreme Court precedents make it appear unimportant whether the court was aware of all the facts to support the guilty plea prior to accepting it irrevocably. The usable proof must have been offered in the presence of the accused, but we are not concerned with "what facts the sentencing judge knew but what facts were available and in the record or otherwise before the court." Corley, 585 So.2d at 768. A more recent case that is still pending on rehearing considered *547 evidence presented at the post-conviction relief hearing, when the State indicated that this evidence was in its possession at the time of the earlier plea. Carter v. State, No. 97-CT-01468-SCT, ___ So.2d ___, 1999 WL 1126595 (Miss. Dec.9, 1999).
¶ 19. It is on the scale described by the preceding authorities that the Court is to weigh the evidence, accepting that less conclusive evidence must be shown than at trial, that reasonable inferences are available to fill gaps that might have been filled with evidence at trial, and that it is an understanding of the charges and a voluntary plea of guilt that is the overriding consideration.
¶ 20. What is unquestioned is that Myers admitted that the girl got into his car for the purpose of being driven home, but then he did not take her there. He admitted seeking ransom for the child and driving to a highway rest stop to claim it. There was no discussion of what might have been said in the vehicle when Myers decided not to take the short trip to her house, but those are the details beyond the necessary bare admissions. That Myers either altered or just ignored the girl's desire to be taken straight home can be inferred, a lesser inference than occurred in Corley to make that accused at least an accessory. Another reasonable inference from that set of facts is that Myers intended to restrain the young girl against her will if that was necessary. Absent some such threat over the telephone, it is hard to imagine how the demand for ransom was made.
¶ 21. The Court acknowledges that another section of the kidnapping statute raises some questions about the point just made about restraint. The separate section that immediately follows in the statute for confining a child under the age of ten against the will of the parents was not charged. The factual possibility of a child's blithe willingness to travel with a stranger may be a significant part of the reason for the alternative language in the statute. By charging the general section, though, which concerns confining someone against that person's "will," the fact that the victim is a child and can not legally "consent" is arguably irrelevant. The State might not have wanted to accept the evidentiary burden of proving parental will in this case, since at least from Myers's version of the facts the girl was largely on her own. Myers stated that the girl told Myers that she did not know where her mother was, and when he asked the location of the father, her unresponsive answer was that her mother was on crack cocaine. No further evidence regarding the girl's family situation appears in the record. Not having so charged, the State cannot prove its case by the inference that the parents did not consent to the taking. On the charge made, there must be some basis to conclude that Myers had an intent to confine the girl against her will after coaxing her into the vehicle.
¶ 22. The statutory intent is to confine secretly or to imprison against the will. Myers did not need to have the intent to restrain her forever and never to release her. The statute only requires that the intent exist to confine for some period of time. Miss.Code Ann. § 97-3-53. The Supreme Court has held that kidnaping is not a specific intent crime. That means that no proof is needed that Myers had the specific intent to kidnap at the time of taking this girl. Williams v. State, 544 So.2d 782, 789 (Miss.1987). "[I]t is sufficient that the circumstances resulted in such a manner as to effect a kidnaping as opposed to an actual intent to kidnap, i.e. it is not necessary to establish the mental state of intent by direct evidence." Id. at 790.
¶ 23. That last quoted sentence could be seen as saying two somewhat unrelated things: 1) no actual intent to kidnap at the time of the beginning of the crime is needed, and 2) no direct evidence of the necessary intent is required. The latter point is true for all crimes, though, as intent is usually proved by circumstances and not *548 by an admission by the defendant. Voyles v. State, 362 So.2d 1236, 1243 (Miss.1978). The significance of the holding that no specific intent is needed is that Myers need only to have the intent to cause the events that followed, the intent forming at each stage. When he decided to seek ransom in relation to when he took the girl is not important. That the girl got into his vehicle willingly with the promise to take her the few blocks home constituted a deceitful act, an "inveigling," when Myers in fairly short order decided not to take her home and instead to take her into Alabama. At some time after that he made a demand for ransom, which by reasonable inference must have included a threat not to release heror worse.
¶ 24. Whether the Court infers the intent from the circumstance of Myers's picking up this girl and then later asking for a ransom, or whether only a general intent is needed to do the acts that led to the request for a ransom, there was sufficient evidence before the trial court to conclude that the State could prove this part of the charge. The trial court could conclude absent any other evidence of what happened in the Pascagoula parking lot that Myers's acts inveigled the girl into his car and that he had the intent secretly to confine her for some period of time against her will. The factual basis exists and we affirm on this issue.

2. Plea agreement
¶ 25. The second issue involves an alleged breach of the plea bargain agreement.
¶ 26. Myers and the prosecution reached an agreement that in return for a guilty plea the State would drop the other charges and recommend a twenty-five year sentence. At the plea hearing, the judge explained that she was not bound by the recommendation of the prosecution. That is correct, as the court has full discretion within the sentencing law regardless of a plea agreement. Martin v. State, 635 So.2d 1352, 1356 (Miss.1994).
¶ 27. There is also an unusual feature of this agreement. Though the accused had agreed to plead if the State recommended a twenty-five year sentence, he was in fact not agreeing to stand mutely in his acceptance of that sentence recommendation. Myers wished a sentencing hearing at which he could present evidence and argument to convince the trial judge to give a lesser sentence. The trial court characterized this as an "open" plea, which more frequently is the description given to a plea agreement in which the State makes no sentencing recommendation. Regardless of the proper label, the agreement is clearly shown. Myers would plead guilty; the State would recommend twenty-five years; other charges would be dropped if the sentence given was no less than that; and a sentencing hearing to permit Myers to seek a lesser sentence would be held.
¶ 28. The limitations on a prosecutor in this area are partly statutory:
A district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, without the consent of the court; and, except as provided in the last preceding section, it shall not be lawful for any court to dismiss a criminal prosecution at the cost of the defendant, but every cause must be tried unless dismissed by consent of the court.
Miss.Code Ann. § 99-15-53 (Rev.2000).
¶ 29. Although the trial court is generally not bound to any plea agreement, there have been situations in which general rule does not apply. In one precedent, charges against the same defendant were pending before two different trial judges in Adams County. A plea of guilty to the charge pending before the first judge was entered, in exchange for the dismissal of the charges pending before the other circuit judge. The second judge had not yet been consulted. When the District Attorney after the guilty plea sought to have those other charges dismissed, the second judge *549 refused. State v. Adams County Circuit Court, 735 So.2d 201, 202-203 (Miss.1999). The Supreme Court held that the trial judge abused her discretion in not dismissing the cases because the defendants had detrimentally relied upon the agreement when they pled guilty on the other charges. Id.
¶ 30. The detrimental reliance in Adams County was pleading guilty and the providing of information at the plea hearing. Id. at 205. Different reliance arose in one case in which a constable resigned from office as part of a plea agreement. Edwards v. State, 465 So.2d 1085, 1086 (Miss. 1985). Substantial reliance has also been found when an accused provided information about the crime and submitted to a polygraph as part of a plea agreement. Moody v. State, 716 So.2d 592, 594-95 (Miss.1998).
¶ 31. The plea agreement here was breached. In return for a guilty plea, the State had agreed to a fairly simple obligationmake a recommendation for twenty-five years. Instead, the district attorney recommended thirty years. It is true that the trial judge was not bound by either figure, but it is the State's violation of its agreement regardless of ultimate sentence that concerns us.
¶ 32. The United States Supreme Court has addressed the issue of a prosecutor's failure to fulfil a commitment to recommend a certain sentence. The Court held that since the prosecution had breached the agreement, the defendant was entitled either to specific performance or withdrawal of his guilty plea. Santobello v. New York, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In Santobello, the facts are remarkably similar to the present case. After reaching a plea agreement for the prosecution not to recommend any sentence, the defendant pled guilty. Id. at 258, 92 S.Ct. 495. At sentencing, a different prosecutor nonetheless recommended the maximum sentence, which was accepted. Id. at 259, 92 S.Ct. 495.
¶ 33. The Court stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262, 92 S.Ct. 495. Even if the trial judge indicated that the improper recommendation was not the basis of the sentence, a reversal is still required in "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty...." Id. We have reached that same point in the present case.
¶ 34. The next step is our next issue. The Court remanded for this further action:
The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.
Santobello, 404 U.S. at 263, 92 S.Ct. 495. The rule we find stated, though the Supreme Court was fractured in its votes with only three of seven participating justices joining the opinion, is that the trial court and not the defendant decides the appropriate remedy. Subsequent consideration of the issue at the Supreme Court has suggested that the accused cannot insist on specific performance of a plea agreement and may be forced to go to trial. Mabry v. Johnson, 467 U.S. 504, 511 n. 11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). That appears still to leave the choice of remedy largely with the trial court.
¶ 35. Various federal courts have considered the Santobello remedy issue. In the Third Circuit, the rule is to remand the case to the district court for a determination *550 of what relief should be granted. United States v. Moscahlaidis, 868 F.2d 1357 (3rd Cir.1989). The First Circuit generally orders resentencing before a different judge after which the petitioner "will obtain all he says he was promised and can then have no right to withdraw the plea." United States v. Kurkculer, 918 F.2d 295, 300 (1st Cir.1990) (quoting McAleney v. United States, 539 F.2d 282, 286 (1 st Cir.1976)).
¶ 36. Here, there was a plea agreement that was breached by the prosecution. We find that the agreement must be upheld. We remand to the lower court with instructions that a sentencing hearing be provided before a different trial judge. That judge must determine whether "the circumstances of this case require only that there be specific performance of the agreement," or whether there are reasons justifying Myers's being permitted to withdraw his guilty plea. If withdrawal of the plea is not permitted, then the prosecutor's sentencing recommendation is controlled by the former agreement that a twenty-five year sentence is appropriate. The other terms of the agreement as shown on this record also are still in effect.
¶ 37. The requirement that a different trial judge be involved on remand should be taken as an objective determination about appearances, one that is commanded by Santobello. It is not a statement in any way about the specifics in this case. The new sentencing hearing is to be conducted by a judge who did not participate in the earlier sentencing hearing in any capacity.
¶ 38. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT DENYING PETITIONERS POST-CONVICTION RELIEF IS REVERSED IN PART AND REMANDED. ALL COSTS ARE ASSESSED TO JACKSON COUNTY.
McMILLIN, C.J., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., DISSENTING WITH SEPARATE WRITTEN OPINION, JOINED BY KING, P.J.
MYERS, J., NOT PARTICIPATING.
IRVING, J., dissenting:
¶ 39. Also, I believe that the record does not contain sufficient information for the trial court to have determined that Myers's guilty plea was intelligently made and undergirded by a sufficient factual basis. Accordingly, I dissent.
¶ 40. In this appeal, Myers asserts: (1) that the trial court erred (a) in accepting his guilty plea because no predicate factual basis was presented to the trial court to support the charge, (b) in finding that his plea was entered with full scienter of the crime charged, and (c) in improperly advising him of the maximum and minimum sentences for the offense to which he pleaded, (2) that the trial court abused its discretion in allowing the State to rescind the State's sentencing recommendation and (3) that he received ineffective assistance of counsel.
¶ 41. Myers was indicted in a two-count indictment with kidnapping and felony child abuse, but the felony child abuse count was dismissed pursuant to the State's motion for an order of nolle prosequi. The count of the indictment, to which Myers pleaded, alleged that he did "feloniously, willfully and without lawful authority forcibly seize and confine or inveigle DW with the intent to cause the said DW to be secretly confined or imprisoned against her will."
¶ 42. Myers's plea of guilty and sentencing occurred in separate hearings on separate days. At the plea hearing, the trial court did not ask the State for a factual basis for the plea. Instead, the trial judge asked Myers to tell her what happened. This is what was said:
Q. Tell me what happened to this child at Wal-Mart.
A. I did come across Miss Webb at Wal-Mart. At the timewell, I *551 feel like I'm guilty because I did have her with me. I did talk to
Q. You took the child away from Wal-Mart?
A. I didn't forcibly take the child away from Wal-Mart. When this whole thing happened, my intentions were to help the child. Through the course of the evening, one thing led to another. I talked to Detective Jenkins on the telephone. The conversation about money came up, and I went to get the money. Therefore, from my understanding of the law, then I am guilty of kidnapping.
Q. Mr. Myers, did you take this child away from Wal-Mart without permission of her parents or anyone else?
A. Yes, I did.
A. Did you take her to Alabama?
A. Yes, I did.
Q. And the child was seven years old at the time.
A. Yes.
¶ 43. Regarding the State's recommendation on sentencing, the record reveals the following:
Q. Has anyone promised you anything or told you the Court would sentence yougive you a lighter sentence if you pled guilty as opposed to going to trial?
A. Not other than what was discussed in the courtroom, the plea bargain.
* * * *
Q. Do you understand that the State will make a recommendation as to a sentence in this case?
A. I do.
Q. And what do you think their recommendation will be?
A. Your Honor, I had first understood the recommendation would be for dismissal of the other charges and a recommendation of twenty-five years, as a habitual offender, on the kidnapping charge.
Q. Twenty-five years without parole, which meansas a habitual offender, that's what that means. Do you understand that?
A. Yes, Your Honor.
Q. Is that the recommendation of the State?
BY MR. MILLER: Your Honor, that is. The State will recommend twenty-five years, without parole, upon the condition that that iseither the sentence that he pleads to today and is sentenced to, or if we have a sentencing hearing, after the sentencing hearing, provided he is sentenced to twenty-five years or more, the State will nol-pros the other charges.

¶ 44. After some additional discussion, the details of which are not relevant to the issue before us, the trial court accepted Myers's plea of guilty to kidnapping and continued the case for sentencing at a later date pending completion of a pre-sentence report.
¶ 45. At the sentencing hearing, this is what occurred:
BY THE COURT: And what were you doing here in Jackson County?
BY THE DEFENDANT: I had come down here to get shrimp.
BY THE COURT: Oh, that's right. I remember now. To take back up there to sell.
BY THE DEFENDANT: Yes, ma'am.
BY THE COURT: And while you were here, you stopped off at Wal-Mart and kidnapped a seven year old. Was she seven?
BY THE DEFENDANT: Your Honor, what happened was, ... I stopped at Wal-Mart to use the telephone to call my partner in Ohio to have him wire me some money to get some more shrimp to get some shrimp, because I had lost my money. I saw the girl in the game room. I went into the game room to kill time because there was no answer at the *552 house. The girl asked me if she could play the game. She was pretending to play it. She didn't have any money in the machine. She asked me if I would put a quarter in. I gave her a quarter to play the game with. She played that game. I gave her another quarter. She ended up following me to my van. I told her I didn't have anymore money, I had to go to my van to get some quarters so I could make a phone call. I'm walking to my van and she's following me. I stopped and turned around in the parking lot and I asked her, "Honey, where is your mother?" She says, "I don't know." I said, "Well, where is your daddy?" She said, "My mom has been smoking crack. I don't know where she's at." That's what the child told me. I realize I should have taken her into Wal-Mart. Like I said, I was drunk. I didn't know what I was doing. I ascertained from the child that she lived not far from Wal-Mart. And I told her to come along with me and I would take her home.
BY THE COURT: And some way you ended up in Mobile calling the police and trying to get ransom?
* * * *
BY THE DEFENDANT: Yes, ma'am. When I did finally reach the people on the telephone, I got carried away and I did ask for the money.
BY THE COURT: Does the State have anything?
BY MR. HARKEY: Your Honor, I'm notKeith Miller was my assistant handling
this case and at the plea hearing. I'm not sure a twenty-five year recommendation was made on behalf of the State, so, I'm not sure about that. But, regardless of counsel's opinion as to that recommendation or not, regardless of this gentleman's intent to harm anybody or not, the pain, the trauma that he inflicted on the family of this victim is the only thing worse he could have done or more harm he could have inflicted would have been to physically harm that child....
I think the court has the opportunity to sentence him to thirty years as a habitual offender under the statute, and the court should take that opportunity and impose that sentence on him.
¶ 46. The trial judge sentenced Myers to thirty years as a habitual offender on the kidnapping charge. This was congruent with the State's recommendation.
¶ 47. Having stated the pertinent facts, I now turn to a discussion of the reasons why I believe this case should be reversed and remanded with directions to the trial court to allow Myers to withdraw his guilty plea.

I. The factual basis undergirding Myer's guilty plea
¶ 48. Myers was charged with the offense of kidnapping under Miss.Code Ann. § 97-3-53 (Rev.2000). A person is guilty of kidnapping under the provision of the aforesaid code section if he (1) shall without lawful authority forcibly seize and confine any other person, or (2) shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will, or (3) shall without lawful authority forcibly seize, inveigle or kidnap any child under the age of ten (10) years and secretly confine such child against the will of the parents or guardian or person having the lawful custody of such child.
¶ 49. The indictment did not charge Myers with forcibly seizing, inveigling, or kidnapping a child under the age of ten years, nor did it charge him with secretly confining the child against the will of the parents, guardian, or person having the lawful custody of such child. Rather, the indictment specifically charged Myers with "feloniously, willfully and without lawful authority forcibly seizing and confining or inveigling DW with the intent to cause the said DW to be secretly confined or imprisoned *553 against her will." I find a huge difference between confining one against her will and confining one against the will of her parents, guardian or person having the lawful custody of the one confined.
¶ 50. Myers contends that the trial court accepted his plea in violation of URCCC Rule 8.04(3), which requires the trial court to find a factual basis before accepting his guilty plea. Before a plea is accepted, there must be substantial evidence that the accused did commit the legally defined offense to which he/she is offering the plea. Corley v. State, 585 So.2d 765, 767 (Miss. 1991). "What facts must be shown are a function of the definition of the crime and its assorted elements." Id. However, there must be enough proof placed on the record to allow the court to say with confidence the prosecution could prove the accused guilty of the crime charged and that the accused's conduct was within the ambit of that defined as criminal. Id.
¶ 51. On close examination of the record, I find that the proof was not sufficient to show Myers guilty of the crime as charged in his indictment. The only factual basis was given by Myers. The State did not produce any evidence or offer a proffer as to what it would prove. During the plea hearing, Myers testified that he did not forcibly take the child away from Wal-Mart. However, it was his understanding that he was guilty of kidnapping because he went to get the money.
¶ 52. It is clear that Myers's statement was insufficient to allow the court to say with confidence the prosecution could prove the accused guilty of the crime charged and that the accused's conduct was within the ambit of that defined as kidnapping. The State was required to prove that Myers forcibly seized and confined or inveigled DW with the intent to cause the said DW to be secretly confined or imprisoned against her will. From the factual basis given, one cannot glean sufficient evidence to find that Myers took the child by force or inveigled her, a point that will be discussed later in this dissent. According to Myers's statement, the child voluntarily followed him out to his van. Also, Myers's statements indicate that he did not have a full understanding of what it took to prove the crime of kidnapping. Myers believed that having the minor in his possession and asking for money made him guilty.
¶ 53. The majority argues that Myers's asking for the money is indicative of an intent to secretly confine the child against her will until the money was paid. I do not disagree with that assertion. However, facts supporting proof of that one element is not enough because there must be substantial evidence that the accused did commit the legally defined offense to which he/she is offering the plea. See Corley, 585 So.2d 765 at 767. Moreover, there is still no evidence of "force" or of "inveigling." Further, it is clear that the trial court proceeded on a theory that it was sufficient if the evidence showed that Myers's intention was to confine the child against the will of the child's parents. This is despite the fact that the indictment charged that Myers forcibly seized and confined or inveigled the child with the intent to cause the child to be secretly confined or imprisoned against her will.
¶ 54. The majority finds the following admissions by Myers indicative of Myers's intent to cause the child to be secretly confined or imprisoned against her will: (1) he talked to a police detective about ransom money, (2) he went to a rest stop on the interstate highway to pick up the ransom money, first dropping the girl off at another location, and (3) he told the girl in the parking lot that he would take her home and instead, took her from Pascagoula to Mobile where he made the call about the ransom.
¶ 55. I agree that one may infer a sinister motive from the enumerated admissions. However, we cannot reach Myers's intention before discerning a basis for concluding that the taking was either by force or by inveigling, all with the intent to *554 cause the young girl to be secretly confined or imprisoned against her will. Therein lies the rub.
¶ 56. The majority concedes that there is no evidence of a forcibly seizing, and it finds that "an interpretative issue arises as to whether the word, `forcibly' also applies to `confine' or potentially even to `inveigle.'" The majority further concludes that "inveigling has no component of force, but only coaxing." I find no argument with these interpretative conclusions by the majority. However, the majority, in my opinion, fails or refuses to apply its interpretative analysis to the facts.
¶ 57. The words, "seize" and "confine" are joined in the conjunctive, not the disjunctive. Thus, even if force applies only to the seizing, the crime is not accomplished unless there is a forcibly seizing. In other words, as stated, the crime may be committed by either forcibly seizing and confining or by inveigling with the intent to cause the child to be secretly confined against her will. It is not sufficient to only show that the child was confined.
¶ 58. Since the majority concedes that no force was used in the seizing, there must be either direct or circumstantial evidence proving or indicating that Myers inveigled the young girl. I find the factual basis lacking on this element as well.
¶ 59. The AMERICAN HERITAGE COLLEGE DICTIONARY 714 (3rd ed, 1993), gives the following definition for the word inveigle: "To win over by coaxing, flattery, or artful talk. To obtain by cajolery." Coax means "to persuade or try to persuade by pleading or flattery; cajole," and cajole means "to urge with gentle and repeated appeals, teasing or flattery." Id. at 267. Myers's telling the little girl, who had voluntarily followed him out into the parking lot, that he would take her home, hardly measures up to the quoted definition of inveigle. There are simply no facts from which the trial judge could have drawn any reasonable inference that Myers inveigled the young girl as that term is defined.
¶ 60. The majority cites several cases which are just inapplicable to our fact situation here. For example, the majority cites Reynolds v. State, 521 So.2d 914 (Miss.1988), for the proposition that "there need not be proof of each element of the offense, nor a belief beyond a reasonable doubt that a conviction would result." Majority opinion at 544. What the Reynolds court said was this: "In sum, admission of guilt is not a constitutional requisite of an enforceable plea. Knowing and voluntary action by the accused is, and, as well, an independent evidentiary suggestion of guilt." Id. at 917 (emphasis added). For whatever reason, the majority fails to recognize the key word, "independent." Here, there is no independent evidentiary suggestion of guilt because the prosecution offered none. Also, the Reynolds opinion contains this pertinent finding that is not mentioned in the majority opinion:
At Reynolds' plea hearing, the Circuit Court questioned him carefully. When Reynolds equivocated on his complicity in the crimes charge, the Court questioned him more pointedly, going so far as to tell him exactly what was required for him to enter a plea of guilty. The record reflects that Reynolds did eventually admit his guilt. Beyond this, the prosecutor offered a concise statement of facts to establish the crime, the investigation, and the apprehension of Reynolds and his co-defendant Young.

Reynolds, 521 So.2d at 917 (emphasis added).
¶ 61. Additionally, the majority quotes extensively from Gazzier v. State, 744 So.2d 776 (Miss.1999), in support of its argument that a defendant's guilty plea is valid even absent a finding that he admitted to each of the elements of the offense. Majority opinion at 6. However, a careful reading of Gazzier leaves little doubt that the holding in Gazzier provides no support for the majority's view. It is true that the Gazzier court upheld the defendant's guilty plea to the crime of sexual battery, *555 which requires penetration, despite the fact that the defendant admitted only to attempting to penetrate the victim. Not mentioned, however, in the majority opinion is this telling quote from Gazzier: "Further, the prosecutor represented to the trial judge that the victim would testify that Gazzier had, in fact successfully penetrated her." Id. at (¶ 8).
¶ 62. Also, not noted by the majority is the fact that only three justices of the supreme court joined the majority's rationale in Gazzier. Three justices disagreed with the rationale and concurred in the result only. Justice Sullivan dissented and was joined by Justice McCrae. Justice Banks, one of the justices concurring in the result only, wrote separately and argued that the court should not reach the issue of the adequacy vel non or the defendant's apprisal of the elements of the offense because the issue had not been raised before the trial court. However, Justice Banks was of the view that if the court was going to reach the issue, then he agreed with the analysis of the dissent that apprisal of each element of the offense is required. Justices Pittman, P.J., and Waller joined Justice Banks's concurring opinion.
¶ 63. I agree with Myers's argument that at the plea hearing, he denied guilt of essential elements of the charge listed in the indictment. He argues that the indictment did not charge as an essential element that he, without lawful authority, forcibly seized, inveigled or kidnapped a child under the age of ten years and secretly confined such child against the will of the parents or guardian or person having the lawful custody of such child. He further contends that the trial court relied upon a factual basis that is incongruent with the charge laid in the indictment. I agree. When the State was asked by the trial court to explain the charges against Myers, the prosecutor responded by saying, "he is charged that he did seize or confine DW with the intent to keep her secretly confined." Note that the prosecutor said nothing about what the State would prove. Had the State offered its version of what it would prove despite anything that Myers said to the contrary, we would have a much different case. But here, as stated, the record contains nothing as to what the State could prove. This is just the opposite of what transpired in Reynolds and Gazzier.
¶ 64. It may be argued further that Myers was on notice that he was being charged under the entire kidnapping statute which would allow the State to prove kidnapping by proving that the child was under ten years of age and was taken without her parents' consent. However, the specific and precise language used in the indictment negates any such argument. Further, to allow the State to proceed to prove kidnapping by showing that the child was under ten years of age and taken with the intention to secretly confine her against the will of her parents, guardian or other person having lawful custody would be allowing a conviction on an indictment not returned by the grand jury. This would be tantamount to allowing the indictment to be impermissibly amended. Cf. Quick v. State, 569 So.2d 1197, 1198-99 (Miss.1990).
¶ 65. Assuming arguendo that the indictment was sufficient to allow the State to proceed to prove kidnapping by showing that Myers took the child with the intention of secretly confining her against the will of her parents, guardian or other person having lawful custody, there is still a problem. Even though the record indicates that Myers stated that he did not have permission to take the child from Wal-Mart, there is no evidence that she was secretly confined against the will of her parents, guardian or other person having lawful custody of the child. Taking the child without the permission of her parents is not synonymous with taking the child with the intention of secretly confining her against the will of her parents. The record clearly indicates that the child was outside the control of her parents. As *556 discovered at the sentencing hearing, the minor informed Myers that she did not know the whereabouts of her parents, and at that point Myers merely decided to assist the child.
¶ 66. Inasmuch as no evidence or testimony was provided to infer that Myers's conduct was within the ambit of that defined as kidnapping, I would hold that the trial court should not have accepted Myers's guilty plea to kidnapping on the factual basis before it. The problem with the inadequacy of the factual basis could have been cured with the prosecution offering a factual basis to the court that covered the gaps. Given the views expressed in the separate opinions in Gazzier, it seems reasonable to conclude that Gazzier stands at least for the proposition that a criminal defendant must be advised of all of the elements of the charge and that there must be at least a concise statement of facts offered to establish the crime. Here, no evidence was offered to establish any of the elements of the crime, much less all of them.

II. Breach of the plea agreement
¶ 67. Myers argues that the trial court erred in allowing the prosecutor to rescind the State's commitment pursuant to the plea agreement to recommend twenty-five years in exchange for Myers's guilty plea. The record is absolutely clear that the State agreed to recommend twenty-five years and to dismiss the felony child abuse charge as a part of the plea agreement. The record is likewise clear that Myers carried out his part of the deal, but the State reneged. While the trial court could not prevent the prosecutor from changing his mind, it could have and should have inquired of Myers whether he still wanted to plead guilty in light of the State's back-tracking on the deal. Further, had Myers then wished to withdraw his plea, the trial court should have allowed him to do so. The State is not entitled to receive the benefit of the plea bargain without keeping its end of the bargain. "Agreements between the State and defendants must be upheld by the trial court where a criminal defendant has detrimentally relied upon the agreement." Moody v. State, 716 So.2d 592 (¶ 16) (Miss.1998) citing Edwards v. State, 465 So.2d 1085 (Miss.1985); Boyington, 389 So.2d [485] at 491 [ (Miss. 1980) ] (emphasis added). "To be sure, while there is no constitutional right to enforcement of a plea bargain, contractual principles of reliance may, under certain conditions, be enforced against the prosecution." McFee v. State, 511 So.2d 130, 133 (Miss.1987) (citations omitted).
¶ 68. In Edwards, Ray Edwards, a former Leake County constable, came to an agreement with the district attorney whereby Edwards would resign his position in exchange for immunity from prosecution for extortion. Edwards resigned his position. Edwards, 465 So.2d at 1085. However, the district attorney did not move for an order of nolle prosequi. Id. at 1086. Subsequently, the grand jury, on its own initiative, decided to investigate Edwards. Id. at 1085. Edwards's motion to quash the indictment was denied, and he was tried and found guilty of extortion. Id. at 1086. In reversing, the Mississippi Supreme Court found that the trial court abused its discretion in not quashing the indictment because Edwards had detrimentally relied on the promise of the district attorney. Id.
¶ 69. I find the reasoning in Edwards compelling. Though the trial court would not have been bound by the State's recommendation in the case sub judice, the State, in my opinion, was nevertheless obligated to follow through on its agreement with respect to the recommendation. This it did not do. Accordingly, I would hold that the trial court erred in dismissing Myers's motion for post conviction relief wherein he sought to withdraw his guilty plea because the State failed to keep its end of the plea agreement.
¶ 70. The majority cites Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for support of the *557 remedy it offers for the State's blatant violation of the plea agreement. It is true that the Santobello court left it to the state courts to determine the proper remedy for a prosecutor's violation of a plea agreement. Santobello involved a New York state prisoner who had pleaded guilty pursuant to a plea agreement between Santobello and the state of New York. The United States Supreme Court vacated the judgment of conviction and remanded the case for further proceedings. It should be noted, however, that Justice Douglas who wrote a separate concurring opinion observed that the court had no supervisory jurisdiction of the case and Rule 11 of the Federal Rules of Criminal Procedure had no relevancy. Rule 11 of F.R.C.P. requires the trial court to embody the terms and conditions of the plea agreement in the judgment if the court accepts the plea agreement. If the court rejects the plea agreement, the defendant is given the option to stick with his plea or withdraw same.
¶ 71. In his concurring opinion, Justice Douglas also observed:
The lower courts, however, have uniformly held that a prisoner is entitled to some form of relief when he shows that the prosecutor reneged on his sentencing agreement made in connection with a plea bargain, most jurisdictions preferring vacation of the plea on the ground of involuntariness while a few permit only specific enforcement.
Santobello, 404 U.S. at 266, 92 S.Ct. 495. Justice Douglas further observed that, "[i]n choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not the State." Id. at 267, 92 S.Ct. 495.
¶ 72. Also, Justice Marshall in an opinion, joined by Justices Brennan and Stewart, concluded that a defendant has a constitutional right to withdraw his guilty plea in cases of a breach of the agreement by the prosecutor. Id at 268, 92 S.Ct. 495. Justice Marshall opined further: "When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea." Id. at 268, 92 S.Ct. 495.
¶ 73. The majority cites other federal cases from different circuits which allows for resentencing before a different judge when a prosecutor has broken his promise. I do not, however, believe those cases are helpful to our situation because we do not have a state counterpart to Rule 11 of F.R.C.P. In the federal system even if the plea bargain is enforced against the reneging prosecutor, the defendant would still have a chance to withdraw his plea if the agreement were not accepted by the court. Therefore, ultimately, a defendant could avoid any prejudice, that he perceives he may have suffered on resentencing, by simply withdrawing his guilty plea if the agreement were not accepted by the trial judge. With the procedure offered by the majority, Myers will be without any further remedy if the trial judge resentences him to the same thirty years. It is no defense to this argument to say that that could have happened in the first instance. Criminal defendants rely on the existing plea bargain procedure because they know that trial judges, with rare exceptions, accept the recommendation of the prosecutor and that knowledge is part of the inducement to enter the plea pursuant to the agreement.
¶ 74. The majority's solution to the State's blatant breach of the plea agreement is to remand the case to the trial court for a resentencing hearing before a different judge. At that hearing the judge "must determine whether the `circumstances of this case require only that there be specific performance of the agreement,' or whether there are reasons justifying Myers's being permitted to withdraw his guilty plea." Majority opinion at 13. I find this solution to be no solution. What reasons could there be for allowing Myers to withdraw his plea other than that basic *558 fairness and due process dictate that the agreement, at the option of the defendant, should be vitiated when the State has extracted the plea on a specific condition but wilfully refuses to honor the condition? The choice to withdraw or not should be Myers's choice, not the court's or the State's. Do we expect the State to argue in favor of allowing the withdrawal of the plea?
¶ 75. I would reverse and remand to the trial court with directions to allow the withdrawal of the guilty plea. This, however, would not prevent Myers from entering a new guilty plea on remand pursuant to a new plea agreement if he and the State desire to enter into such an agreement.
KING, P.J., JOINS THIS SEPARATE WRITTEN OPINION.