MAXWELL, J.,
for the Court:
¶ 1. Timothy Bell raises two issues in his appeal of his methamphetamine-distribution convictions. He first suggests it was inherently unfair for him to have been tried on drug charges wearing a red prison jumpsuit. But to have preserved a constitutional violation based on his trial attire, Bell would have had to have objected to wearing prison garb, which he did not. So he waived any clothing-based challenge to his two convictions.
¶ 2. Bell also contests the trial judge’s denial of the State’s request to nolle pros a drug count on which he was ultimately convicted. In Mississippi, leave of court is statutorily required when a prosecutor seeks dismissal of a count from an indictment. And a trial judge’s grant or refusal of leave of court is reviewed for reasonableness under an abuse-of-discretion standard. Here, the judge’s exclusion of a video purportedly depicting the drug sale in Count I prompted the State’s request to dismiss the count. But the judge found dismissal was not warranted since the informant who made the drug purchase charged in Count I had already testified that Bell had sold him drugs and was available for further testimony. After review, we find this decision was reasonable and affirm.
Facts and Procedural History
¶ 3. A grand jury charged Bell with two counts of selling methamphetamine. The charges resulted from two separate controlled undercover purchases of methamphetamine from Bell. Two different confidential informants wired with video-recording devices were utilized to make the purchases. And both testified at trial to purchasing methamphetamine from Bell on the charged dates. After a jury found him guilty of both counts, Bell was sentenced to two consecutive forty-year sentences, totaling eighty years, as a habitual offender and second drug offender. He was ordered to serve his sentences in Mississippi Department of Corrections custody.[1] Bell appealed.
Discussion
I. Prison Clothing
¶ 4. Bell was detained in jail pending trial and wore a “red jumpsuit” during his trial. Though he did not complain to the trial judge about his clothing and there is no evidence the State forced him to wear the jumpsuit, Bell now insists it was unfair for the jury to see him in prison garb.
¶ 5. While Bell argues the identifiable prison clothing denied him the presumption of innocence, courts have not embraced “a mechanical rule vitiating any conviction” based on the mere fact “the accused appeared before the jury in prison garb.” Estelle v. Williams, 425 U.S. 501, *1153 507-08, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Instead, “the particular evil proscribed” by the Fourteenth Amendment “is compelling a defendant, against his will, to be tried in jail attire.” Id. To establish a violation, the defendant must object to being tried in jail clothes. Id. at 512-13, 96 S.Ct. 1691. And failure to object to “being tried in such clothes, for whatever reason is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.” Id.[2]
¶ 6. If Bell had been compelled to appear and be tried in a prison jumpsuit, we would likely be persuaded by his argument. However, Bell concedes he “made no objection to being tried in his prison garb during his jury trial.” Because of his failure to object or point to any evidence he was forced to wear the jumpsuit, we find no State compulsion that Bell be tried in jail attire, and thus no constitutional violation.
II. Denial of State’s Motion to Dismiss Count I
¶ 7. Bell next challenges the trial judge’s denial of the State’s motion to dismiss Count I of the two-count indictment. Count I charged Bell with selling methamphetamine to a confidential informant, Ronnie Cole, on February 17, 2010. At trial, while Cole was testifying, the State sought to admit the purported video recording of the drug deal. But since Cole had not seen the video, the State requested a recess for him to watch it for authentication purposes. After watching the video with Cole, the defendant, and counsel for both parties, the trial judge commented that in his view, the “video show[ed] nothing.” So he ruled the video was inadmissible.
¶8. At this point, agitated with the evidentiary ruling, the State moved to nolle pros Count I, claiming a “lack of evidence” to prove the drug sale beyond a reasonable doubt. But as the judge saw it, even though the video was “worthless,” Cole had already testified that Bell had sold him methamphetamine. And because of this testimony about the charged methamphetamine sale, the judge denied the State’s motion to dismiss Count I.
¶ 9. After the jury was brought back in, trial proceeded with Cole continuing to testify about purchasing methamphetamine from Bell. The State then called the other informant whose alleged drug purchase from Bell gave rise to Count II. While considering admitting the second video, the judge, without prompting, reversed his earlier evidentiary exclusion of the first video — the one supposedly depicting the methamphetamine sale charged in Count I.
¶ 10. As Judge Gordon explained: “I am going to withdraw my evidentiary ruling on the first video[,] ... and I am going to let you recall the witness, Cole, and show that video to the jury.” So the judge ultimately allowed both videos, and the State recalled Cole, who walked the jury through the earlier excluded video and described the drug transaction charged in Count I. The jury convicted Bell of both counts.
¶ 11. Bell does not challenge the sufficiency of the evidence supporting his two drug convictions. Nor does he take issue with the trial judge reconsidering his earlier evidentiary exclusion of the first video. Instead, Bell focuses on the denial of the State’s motion to dismiss Count I. Specifically, he insists that by refusing the State’s *1154 motion to nolle pros Count I, the trial court impermissibly “abdicat[ed] its role as an impartial arbitrator and assumed the hat of the prosecutor.”
¶ 12. But after review, we find this is the first time he has raised this particular argument. And we find several procedural problems with Bell’s new claim.
A. Waiver
¶ 13. First, we note that Bell did not join in the State’s motion to dismiss Count I. Nor did he challenge the court’s ruling at trial. So from the outset we are limited to plain-error review. See United States v. Olano, 507 U.S. 725, 731-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (When a party has forfeited an objection by failing to urge it at trial, an appellate court may exercise discretion to correct the error — but only if the error is clear or obvious and affects the party’s substantial rights.).
¶ 14. Second, on appeal, Bell offers no authority that a Mississippi trial judge’s refusal to dismiss a charge upon the State’s urging mandates reversal. And generally, failure to cite authority amounts to abandonment of the issue. See Hoops v. State, 681 So.2d 521, 526 (Miss.1996) (“[Tjhis Court is under no duty to consider assignments of error when no authority is cited.”); Thibodeaux v. State, 652 So.2d 153, 155 (Miss.1995).
¶ 15. But Bell’s procedural defaults aside, we find his argument lacks merit because of the discretion given Mississippi’s trial judges in deciding to refuse or grant a prosecutor’s motion to dismiss an indictment.
B. Section 99-15-53’s Leave-of-Court Requirement
¶ 16. Under Mississippi law, prosecutors must seek leave of court before an indictment or a count in an indictment may be dismissed. According to statute, “[a] district attorney, or other prosecuting attorney, shall not compromise any cause or enter a nolle prosequi either before or after indictment found, without the consent of the court ... but every cause must be tried unless dismissed by consent of the court.” Miss.Code Ann. § 99-15-53 (Rev. 2007).
¶ 17. While this statute obviously imposes a judicial check on the executive branch’s ability to dismiss or nolle pros an indictment, the pertinent question becomes: what is the extent of that judicial discretion to deny leave?

1. Mississippi’s Approach

¶ 18. The Mississippi Supreme Court has thus far taken a relatively broad view of the judiciary’s discretion over executive-branch requests to dismiss criminal indictments.
¶ 19. In cases where our trial judges have denied the State leave to dismiss or nolle pros indictments, our supreme court has opted to apply a general abuse-of-discretion standard. See State v. Adams Cnty. Circuit Court, 735 So.2d 201, 204 (¶ 8) (Miss.1999) (addressing extent of judicial discretion under section 99-15-53 and holding judge abused discretion in denying State leave to dismiss indictments after defendants detrimentally relied on plea agreement, but not addressing State’s separation-of-powers argument); Moody v. State, 716 So.2d 592, 594 (¶ 11) (Miss.1998) (trial judge abused discretion in unreasonably rejecting plea agreement in murder case based on his desire defendant not receive less than death penalty); Edwards v. State, 465 So.2d 1085, 1086 (Miss.1985) (whether to grant nolle pros request “subject to trial court’s discretion under [section] 99-15-53”).
¶ 20. Applying this abuse-of-discretion standard to the leave-of-court requirement, the supreme court has held that *1155 Mississippi’s trial judges need only provide a “reasonable basis” to grant or deny a prosecutor leave to dismiss or nolle pros an indictment. Adams Cnty., 735 So.2d at 205 (¶ 11) (emphasis added). See also Moody, 716 So.2d at 594 (¶ 9) (citing Burkett v. Burkett, 537 So.2d 443, 446 (Miss.1989)) (when reviewing decision within trial court’s discretion, if correct legal standard was applied, we next ask if trial court’s “decision was one of those several reasonable ones which could have been made”). However, we point out that Mississippi’s reasonableness assessment is quite different from the federal approach.

2. The Federal Approach

¶ 21. While federal courts also utilize an abuse-of-discretion standard,[3] unlike Mississippi’s trial judges, federal district judges are “sharply limited”[4] in their discretion to deny the government leave under Federal Rule of Criminal Procedure 48(a)[5] — the federal counterpart to Mississippi’s section 99-15-53. Deference is instead given to the executive branch and is prompted by the notion that judicial denial of “leave to dismiss an indictment” amounts to “judicial review of the prosecutor’s exercise of executive authority.”[6] Because the executive, not judicial, branch “is primarily responsible for balancing public and individual interests in determining who should be prosecuted,” federal district courts are “reluctant to deny” a prosecutor’s request to dismiss an indictment.[7] The United States Supreme Court has noted the “principal object” of the federal leave-of-court requirement is to protect defendants from “prosecutorial harassment” — for example “charging, dismissing, and recharging, when the government moves to dismiss an indictment over the defendant’s objection.”[8] As the Fifth Circuit has put it, when a defendant consents to dismissal, leave should only be withheld in “extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest.”[9]
¶ 22. But as mentioned, Mississippi has not adopted a similar sharply limited view of judicial discretion under section 99-15-53 when its judges assess motions for leave to dismiss criminal charges.[10] And *1156 as a Mississippi error-correction court, we obviously apply Mississippi’s approach.

3. Potts v. State

¶23. In doing so, it appears the most procedurally analogous ease to the one before us is a case this court previously decided. In Potts v. State, 759 So.2d 500, 504 (¶ 14) (Miss.Ct.App.2000) (citing Moody, 716 So.2d at 594 (¶ 8)), we applied our supreme court’s general abuse-of-discretion standard where a trial judge refused to dismiss an indictment at the State’s urging. In Potts, the prosecutor, aggrieved by an evidentiary ruling, sought dismissal of a burglary indictment based on the prosecutor’s “perception of what evidence regarding drug possession and use would be allowed or disallowed.” Id. After considering the State’s request to dismiss, the circuit judge, who at trial had admitted drug-use evidence for a limited purpose, refused to dismiss the case. On appeal, the defendant raised the denial of the State’s request to dismiss as error. But applying the abuse-of-discretion standard from Moody, we found the trial judge’s refusal of the State’s motion to dismiss “was reasonable and balanced” based on the facts and law. Id. In affirming the trial judge’s decision in Potts, we applied a reasonableness analysis similar to the supreme court’s in Adams County.
¶ 24. In this case, like in Potts, the State was upset at the judge’s evidentiary ruling. Because the video of the first drug buy had been excluded, the State sought dismissal of the related count. But the judge, citing the informant’s testimony about Bell’s drug sale — which was already before the jury and obviously could be further developed — denied the State leave to dismiss. We disagree with Bell that the prosecutor’s mistaken assessment of his evidence left the court with no discretion to deny the motion to dismiss. Furthermore, this is not a case of withdrawal of a proposed plea deal where the defendant gave up a valuable right only to have the State subsequently renege. Here, there was no detrimental reliance or expectations of dismissal, much less any evidence that Bell joined in the State’s motion.
¶ 25. So even absent Bell’s earlier-mentioned waivers, applying the supreme court’s reasonableness analysis, we find the circuit judge’s denial of the State’s motion to dismiss was reasonable under the circumstances. Thus, we find no abuse of discretion.
¶ 26. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SALE OF METHAMPHETAMINE, AND SENTENCE OF FORTY YEARS AS A HABITUAL OFFENDER, AND COUNT II, SALE OF METHAMPHETAMINE, AND SENTENCE OF FORTY YEARS AS A HABITUAL OFFENDER, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE, PARDON, OR SUSPENSION OR REDUCTION OF SEN *1157 TENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Bell had three prior felony convictions. On February 20, 1995, Bell was convicted of selling cocaine. And on February 5, 2004, he was convicted as a second drug offender for possessing cocaine. Bell was also convicted of driving under the influence, third offense, on April 8, 2004.

. See also Ames v. State, 17 So.3d 130, 140 (¶ 45) (Miss.Ct.App.2009) (where defendant fails to object to wearing prison garb at trial, the issue is waived and procedurally barred on appeal).

. United States v. Jacobo-Zavala, 241 F.3d 1009, 1012 (8th Cir.2001) (district court's denial of government's motion for leave to dismiss under Federal Rule 48(a) reviewed for abuse of discretion); United States v. Smith, 55 F.3d 157, 158 (4th Cir.1995) (same).

. Jacobo-Zavala, 241 F.3d at 1012.

. Federal Rule 48(a), though a procedural and not statutory rule, is similar to Mississippi's rule in its requirement that a prosecutor must seek leave of court before dismissing an indictment. The lone difference is that the federal rule requires the government obtain the defendant’s consent to dismiss an indictment during trial, while Mississippi's section 99-15-53 has no consent requirement.

. See Rinaldi v. United States, 434 U.S. 22, 25-31, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (addressing leave-of-court requirement in Federal Rule 48(a) — a somewhat similar mechanism to section 99-15-53, which requires leave of court for government to dismiss indictment).

. Jacobo-Zavala, 241 F.3d at 1012-13 (quoting United States v. Gonzalez, 58 F.3d 459, 462 (9th Cir.1995)).

. Rinaldi, 434 U.S. at 30 n. 15, 98 S.Ct. 81 (citations omitted), rev’g sub nom. In re Washington, 544 F.2d 203 (5th Cir.1976) (en banc).

. United States v. Hamm, 659 F.2d 624, 628 (5th Cir.1981) (citing Rinaldi, 434 U.S. at 28-30, 98 S.Ct. 81.)

. We are aware that our supreme court in Adams County cited Hamm, 659 F.2d at 628—the Fifth Circuit’s preeminent decision on the judiciary's limited role in denying the government leave to dismiss an indictment. But it merely did so to note “[t]he requirement of *1156 court approval for dismissal of a criminal action 'is primarily intended to protect the defendant against prosecutorial harassment.' " Adams Cnty., 735 So.2d at 205 (¶ 12) (citing Hamm, 659 F.2d at 628). Mississippi’s high court did not adopt or even mention Hamm’s next sentence — that trial courts "may not deny a government motion to dismiss a prosecution, coñsented to by the defendant, except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest.” Hamm, 659 F.2d at 628. Instead, the Adams County court reversed the circuit judge's denial of the State's motion to dismiss its indictments and requests to enforce a plea agreement because the judge did not cite a “reasonable basis” for refusing to uphold the plea agreement. Adams Cnty., 735 So.2d at 205 (¶¶ 11-13).