# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00770-COA

**BRANDON WAYNE KING**                                                      **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2023 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ERIC NICHOLAS CERRA |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED, VACATED, AND REMANDED - 03/18/2025 |
| MOTION FOR REHEARING FILED: | |

### BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.

### McDONALD, J., FOR THE COURT:

¶1. Brandon King appeals the Scott County Circuit Court's dismissal of his motion for post-conviction relief (PCR) in which he claimed that the circuit court improperly revoked his probation and participation in a drug court intervention program and imposed his original suspended sentence.[1]    On appeal, King argues that his original sentence of forty-

---

[1] PCR motions are governed in part by Mississippi Code Annotated section 99-39-5(1) (Rev. 2020), which provides:

> (1) Any person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated, civilly committed, on parole or probation, . . . may file a motion to vacate, set aside or correct the judgment or sentence, . . . if the person claims:

five years had been reduced to five years of probation, that he had only violated the terms of his probation twice, and that under Mississippi Code Annotated section 47-7-37(5)(a) (Supp. 2018), the court was not authorized to revoke his probation until his third revocation proceeding.[2]  Having considered the arguments of the counsel and the relevant law, we reverse the order dismissing King's PCR motion, vacate the revocation order, and remand for reinstatement of King's probation.

## Facts

¶2.     On August 18, 2018, Amanda Dobbins's two-year-old child was found malnourished and dehydrated, with hair falling out, head trauma, and fractured bones in the child's arms and legs.  Dobbins and King (her live-in boyfriend) were both later indicted on one count of child abuse and one count of child neglect in violation of Mississippi Code Annotated section

---

> . . . .
>> (h) That his sentence has expired; his probation, parole or conditional release unlawfully revoked; or he is otherwise unlawfully held in custody[.]

[2]  Section 47-7-37(5)(a) provides in part:

> If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation.  For the third revocation, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence.  For the fourth and any subsequent revocation, the court may impose up to the remainder of the suspended portion of the sentence.

2

97-5-39(2) (Rev. 2014).[3] Dobbins's and King's addictions and daily use of methamphetamine contributed to the neglect and abuse of the child.

*King's Guilty Plea and Sentence*

¶3. On February 4, 2019, King filed a petition to plead guilty in which the maximum sentence of between five years and life imprisonment was noted, as well as the State's

---

[3] Mississippi Code Annotated section 97-5-39(2) provided in part:

(2) Any person shall be guilty of felonious child abuse in the following circumstances:

    (a) Whether bodily harm results or not, if the person shall intentionally, knowingly or recklessly:

    . . . .

    (ii) Physically torture any child; [or]

    . . . .

    (v) Starve a child of nourishments needed to sustain life or growth[.]

. . . .

(c) If serious bodily harm to any child actually occurs, and if the person shall intentionally, knowingly or recklessly:
    (i) Strike any child on the face or head;
    (ii) Disfigure or scar any child;
    (iii) Whip, strike or otherwise abuse any child;

(d) Any person, upon conviction under paragraph (a) or (c) of this subsection, shall be sentenced by the court to imprisonment in the custody of the Department of Corrections for a term of not less than five (5) years and up to life, as determined by the court. . . . For any second or subsequent conviction under this subsection (2), the person shall be sentenced to imprisonment for life. . . .

3

recommendation that King be placed in drug court. At a hearing held the same day, King and Dobbins appeared before the court and entered their pleas of guilty to both charges.[4] During the hearing, King told the court that he understood his guilty plea to felony child abuse could result in a sentence of between five years in custody and life in prison and that he could serve zero to five years in custody for his plea to child neglect, along with fines of up to $10,000. The circuit court reviewed with King the constitutional rights he was waiving and confirmed that King understood and waived those rights. In addressing King and the others, the circuit court stated:

> All three of you are looking at truly your natural life in prison. That's what your exposure is. That's very likely, if you wash out of drug court, what's going to happen.

After the State informed the court how it would prove its case against King, the State recommended a sentence of forty years to serve for felony abuse and five years to serve for child neglect. Further, the State recommended that "they be placed on 5 years probation to be served through the drug court in an adjudicated status[.]" Marcus Ellis, who oversaw the drug court for the district, was present and addressed the court. He noted that King had been using methamphetamine and cocaine for ten years and never had any treatment. Ellis noted that the court's considering King for drug court was "an incredible, incredible break," given the egregious crime King had committed. The circuit court stated that it was relying on the recommendations of people it trusted in giving King this opportunity, but the court stated that King would be in a zero-tolerance "situation" with very high expectations. The court

---

[4] At the same hearing the circuit court took the guilty pleas of King and Dobbins, as well as that of another defendant who was charged with a different crime.

accepted the recommendation of the State, sentenced King to a total of forty-five years in custody, and suspended the sentences.[5]

¶4.     Specifically, in the sentencing order titled "Order Placing Offender in Drug Court Program," the court sentenced King to serve forty years for child abuse and five years for child neglect in the custody of the Mississippi Department of Corrections (MDOC), with the sentences set to run consecutively. However, all forty-five years were suspended, and King was placed on "Reporting Supervised Probation under the Eighth Judicial District Drug Court" for a period of five years. As a condition of this probation, King was to complete the drug court program and comply with numerous other directives, including but not limited to weekly reporting, abstaining from the use of drugs or alcohol, not violating any laws, submitting to testing, and paying court and restitution costs. The order, which King signed acknowledging the conditions, stated King understood that he may be immediately incarcerated if he violated any of the terms.

*King's First Violation of the Drug Court Rules*

¶5.     Within two months, King violated the sentencing order by continuing to use drugs and by failing to pay court-ordered fees. On April 18, 2019, the circuit court found that King had violated the sentencing order and modified King's probationary status, ordering that:

> King be placed into the custody of the Mississippi Department of Corrections and shall enroll in and successfully complete the Long-Term Alcohol and Drug Treatment Program, and Thinking for a Change Program. Further, following successful completion of the cited programs, Defendant shall be placed in the Restitution Center until he pays $6075 to the Eighth Judicial District Drug Court, . . . and $5383.50 to the Scott County Court District Clerk . . . upon

---

[5] King was sentenced by Judge Christopher Collins, who has since retired.

5

> successful payment. . . the Defendant shall be returned to the Scott County Jail
> . . . for continuation of the Drug Court program.

Pursuant to this order, King was placed in the custody of MDOC, where he remained in its drug treatment program for nearly a year, and then King was transferred to the Greenwood Restitution Center. However, in May 2020, when the State closed the restitution centers due to COVID-19, King returned to the supervision of the drug court program.

*King's Subsequent Violation of Drug Court Rules*

¶6. On August 20, 2020, drug court supervisor Kim Hughes filed a petition to terminate King from drug court because (1) after his release from MDOC in May 2020, King went to an inpatient treatment center without approval, (2) after his release from that program in July 2020, he failed to report to drug court as required in August 2020, and (3) he was in arrears in his drug court fees. On November 18, 2020, Hughes filed another petition to terminate King from drug court, stating that King had violated the sentencing order, which contained the conditions of his probation, by failing to report weekly, by getting a job but then quitting it the next day, and by failing to pay fees owed. Although a warrant for King's arrest was issued that day, there were no subsequent orders entered pursuant to these petitions.

¶7. In April 2021, Hughes was informed that King had enrolled and completed the residential program at Home of Grace. King had not sought permission from drug court personnel to do this but had unilaterally placed himself in the program. At a later hearing, King admitted that he had consistently either failed drug tests or chosen not to report to drug court as required, which the drug court recorded as a failed test. So, King said, he deliberately enrolled in Home of Grace to avoid his required drug court appearances.

6

¶8.     After his release from Home of Grace in April 2021, King relapsed and either failed his weekly drug tests or just did not report for testing as required; the record is unclear. King's drug court supervisor texted him to report for testing on July 15, 2021. Instead, King unilaterally and without permission again enrolled in Home of Grace. On July 20, 2021, Hughes filed another petition to terminate King's probation because he was in arrears on his fines and fees, because he went to inpatient treatment without prior approval, and because he had failed to report for drug testing and for regular program reporting. A warrant was issued on July 21, 2021, to have King arrested and brought before the circuit court. However, the court dismissed the warrant on August 3, 2021. King remained at Home of Grace from July 2021 through January 27, 2022. Drug court personnel later learned that he was terminated from that program for faking a COVID-19 test. King contacted Hughes on January 31, 2022, and she told him to report for testing.

¶9.     Thereafter, King failed to report for drug testing on February 1, 2022, and February 7, 2022, stating that he had COVID. When he appeared on February 15, 2022, he tested positive for methamphetamine. He had only paid one drug court fee in 2019 and had made no payments since. On March 1, 2022, Hughes filed an amended petition to terminate King's probation for again going to inpatient treatment without preapproval, for failing to pay fees and fines, and again for failing to report in general and for drug testing.

*Hearing on Amended Petition to Terminate King from Drug Court*

¶10.    On March 14, 2022, King appeared before the circuit court for a hearing on these alleged violations and for testing positive for methamphetamine. Hughes testified about

7

King's failures over the years to comply with his probation requirements (as described above). King testified that when he pleaded guilty and started drug court, he was using meth every day of the week. He said he went to meetings twice a week, which "helped a lot," but his "addiction had control over" him. He finally realized that he did not have to "live that life" anymore. He asked the court to allow him to go to the restitution center, which to King would "be punishment for me taking authority in my own hands." After hearing arguments of counsel, the circuit court pointed out that King was in drug court under a suspended forty-five-year sentence: "I'm looking at the order now that was filed April 18, 2019. It has 45 years on this sentence. He pled to that. That is his first notice of what he would be facing if he didn't follow the rules of the drug court." The court noted that King was to follow the rules of the drug court, not the rules or terms King himself set. "You ignored those requirements of our drug court, and you took it on yourself to try to cure yourself. And that is not what you pled to." The court noted that it knew of nothing it could do other than revoke his probation and "put you on your sentence of 45 years."

¶11. The circuit court found in its written order that King had committed the violations in the amended petition, terminated King's participation in drug court, and ordered King to serve his original sentences of forty and five years, respectively, in the custody of the MDOC. The order provided that if King should be released on early release supervision, post-release supervision, or parole, King was to be returned to the Greenwood Restitution Center until he finished paying the fees owed.

*King's PCR Motion*

8

¶12. On March 8, 2023, King filed a PCR motion, claiming that his violations addressed in March 2022 (seeking in-patient treatment without permission, failing to report several times, and testing positive for drugs) were mere technical violations and that he should have been sent to a technical violation center or restitution center under Mississippi's probation/post-release supervision statute, Mississippi Code Annotated section 47-7-37(5)(a), and not sent to prison for forty-five years. King argued that under the statute, he was entitled to reinstatement of his probation because it had been revoked only once (when he was sent to the MDOC rehab center in April 2019) and that only the third revocation authorizes imposition of his original sentence. The State filed no response to King's PCR motion.

¶13. The circuit court summarily denied the relief sought and dismissed King's PCR motion after reviewing King's initial sentencing order and the subsequent orders issued while King was in drug court. The circuit court noted the April 18, 2019 order that had transferred him to MDOC's supervision for King to participate in its drug rehab program. The court also noted the March 14, 2022 order terminating King from drug court because of his numerous violations of its rules. The circuit court found that because King had been placed in an intervention court in lieu of serving the sentence to which he pled guilty, section 47-7-37(5)(a) did not apply, and King's participation in drug court was properly revoked.

*Appeal*

¶14. King appealed and identifies the issues as (1) whether the circuit court erred in concluding that King's supervised probation through the drug court program is not governed by Mississippi Code Annotated section 47-7-37(5), and (2) whether the circuit court erred

9

in fully revoking King's supervised probation and imposing his full sentence in the custody of the MDOC after only two probation revocations.

¶15. The State responds that the probation revocation procedures in section 47-7-37(5) do not apply because drug court is not a "court," per se, but an intervention service offered to the courts. The State notes that King was never eligible under the statute to participate in drug court and that "because drug court participants are not on probation or post-release supervision, they are not subject to [section] 47-7-37(5)(a)."

### Standard of Review

¶16. "We will reverse a circuit court's denial of a PCR motion only when we find the decision 'clearly erroneous.'" *Jones v. State*, 304 So. 3d 702, 705 (¶4) (Miss. Ct. App. 2020) (quoting *Owens v. State*, 281 So. 3d 863, 866 (¶6) (Miss. Ct. App. 2019)).

### Discussion

¶17. A circuit court may summarily dismiss a PCR motion if it is apparent from the face of the motions, exhibits, and prior proceedings that the movant is not entitled to relief. Miss. Code Ann. § 99-39-11(2) (Rev. 2015); *Willis v. State*, 321 So. 3d 584, 587 (¶5) (Miss. Ct. App. 2021). "Dismissal is proper where the petitioner can prove no set of facts in support of his claim that would entitle him to relief." *Robinson v. State*, 302 So. 3d 1285, 1287 (¶5) (Miss. Ct. App. 2020). On appeal of the circuit court's dismissal of his PCR motion, King argues that he stated a viable claim for relief. First, King contends that his original sentences of forty-five years combined were *reduced* to five years of supervised probation in the drug court. Second, King claims that section 47-7-37, the general revocation of probation statute,

10

applies, and that the court could only impose his full sentence when considering a third petition for revocation of his probation. The State argues that the drug court program was a diversionary service program to which section 47-7-37 did not apply. The State further contends that because of the nature of his crime, King was improperly placed in the drug court program, that the probation's provision in his sentence is therefore void and the court could revoke King's probation at any time and impose King's full sentence.

*King's Sentence*

¶18. We begin our discussion by determining King's sentence. First, we note that King's sentencing order clearly states the court had accepted King's guilty plea and sentenced King to a total of forty-five years in custody. However, the court then "suspended" those forty-five years and placed King on five years of probation supervised by the drug court. The circuit court was clearly authorized to suspend King's sentence under Mississippi Code Annotated section 47-7-33(1) (Rev. 2020), which provides:

> When it appears to the satisfaction of any circuit court or county court in the State of Mississippi having original jurisdiction over criminal actions, or to the judge thereof, that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, such court, in term time or in vacation, shall have the power, after conviction or a plea of guilty, . . . to suspend the imposition or execution of sentence, and place the defendant on probation as herein provided[.]

Therefore, pursuant to the sentencing order, King's forty-five year sentence was "suspended," not "reduced." Moreover, the circuit court clearly placed King on probation under the supervision of the drug court.

¶19. The State implies that King's "probation" sentence was illegal and void because King

11

was not statutorily eligible to participate in the drug court program. Mississippi Code Annotated sections 9-23-1 to -23 (Rev. 2019), which authorized the establishment of local intervention courts (drug courts), envisions three types of official participants: First are those who have been charged with a crime but not convicted and who, if they successfully complete the program, may have the charges against them dismissed. The second type of participant is one who has pleaded guilty, but whose plea is held in abeyance pending the defendant's completion of the program when the charges are also dismissed. A third type of participant is one who pleads guilty and is sentenced and who may, on completion of the program, have the record of the criminal conviction or adjudication expunged. Miss. Code Ann. § 9-23-23. However, under Mississippi Code Annotated section 9-23-15(1)(a), to be eligible, "the participant cannot have any felony convictions for any offenses that are crimes of violence as defined in Section 97-3-2." Notably, crimes of violence, by statutory edict, may not be expunged. Miss. Code Ann. section 99-19-71(2)(a) (Rev. 2020) ("[A] person is not eligible to expunge a felony classified as. . . a crime of violence. . . ."). Because King pleaded guilty to felonious neglect, abuse or battery of a child as provided in section 97-5-39, which are crimes of violence listed in Section 97-3-2(1)(n) (Rev. 2014), King was not eligible for official alternative sentencing through the drug court program.[6]

---

[6] Even if King met the eligibility criteria, section 9-23-15(4) specifically provides that "a person does not have a right to participate in intervention court under this chapter." *Jim v. State*, 911 So. 2d 658, 660 (¶8) (Miss. Ct. App. 2005). In that case, we stated that although the intervention courts were created to "reduce the alcohol-related and drug-related court workload, . . . the Code intentionally refrained from creating a right [to participation] by expressly stating, 'A person does not have a right to participate in drug court under this chapter.'" *Id.; see also Phillips v. State*, 25 So. 3d 404, 409 (¶17) (Miss. Ct. App. 2010) (citing this language from *Jim*).

12

¶20.    We agree that King was not eligible for the benefits obtained by successful drug court participants, but this did not prevent the circuit court from suspending his sentence and placing him on probation.  The court's order reflects its intention that King's probation be supervised by the drug court, giving King an alternative and conditional opportunity to avoid incarceration, overcome his drug problem, and resume his life if he successfully completed the program.  A circuit court has the complete discretion to fashion a sentence as long as that sentence does not *exceed* the statutory limits prescribed for the crimes to which a defendant pleads guilty.  *Davis v. State*, 17 So. 3d 1149, 1152 (¶13) (Miss. Ct. App. 2009) ("Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.") (citing *Nichols v. State*, 826 So. 2d 1288, 1290 (¶10) (Miss. 2002)).  Here, King's sentence did not exceed the statutory limits (five years to life in prison pursuant to Section 97-5-39(2)(d)).[7]  For these reasons, we find that the circuit court sentenced King to forty-five years in custody, which was suspended (not reduced) if he completed five years of probation under the supervision of drug court personnel, eligible or not.

*Application of Section 47-7-37(5)*

¶21.    Next we must decide whether section 47-7-37(5) applies to the revocation of King's probation.  On the one hand, King's probation was to be supervised by drug court, which has

---

[7]    The dissent acknowledges that we are just following established precedent concerning what is an illegal sentence.  Moreover, we cannot allow the State, which made the sentencing recommendation, to now prevail on the argument that its own recommendation for probation was illegal.

establishing statutes that contain no provisions or procedures for terminating a participant.[8]

However, this case is not about the functioning and operations of drug courts with respect to its qualified participating defendants. Rather this case is about whether King, whose sentence of incarceration was suspended, resulting in his being placed on probation, is subject to the provisions of the Mississippi statute that deals specifically with revocation of probation, section 47-7-37.

¶22. Although not directly on point, the case of *Atwood v. State*, 183 So. 3d 843 (Miss. 2016), is instructive. In that case, Atwood pleaded to grand larceny. *Id*. at 844 (¶2). He was sentenced to ten years of incarceration, with nine years and eleven months suspended and five years of post-release supervision, including payment of restitution through a restitution center. *Id*. at 845 (¶2). When Atwood was expelled from the restitution center, the circuit court found that Atwood had violated a condition of his release "in that he had failed to complete the restitution center, and was kicked out for good cause." *Id*. at (¶3). The circuit court revoked Atwood's post-release supervision and imposed his sentence. *Id*. Atwood had raised the recently passed 2014 amendments to section 43-7-37, which limited a court's authority to punish a violation of condition of post-release supervision and provided for graduated penalties for "technical violations." *Id*. The circuit court found these to be an unconstitutional limit of the inherent power of the court to enforce its orders. *Id*.

¶23. Atwood filed for post-conviction relief, raising the same issue, and the circuit court denied his PCR motion. *Id*. at (¶4). On appeal, the Mississippi Supreme Court cited the

---

[8] Indeed, the proper body to determine those procedures is the Legislature, which created drug courts by statute.

provisions of section 47-7-37, which specifically deal with the revocation of probation for technical violations and which authorize the imposition of imprisonment only for the third technical violation. *Id*. at 845-46 (¶6). The Supreme Court held that these provisions applied to post-release supervision as well. *Id*. at 846 (¶7). The Court found that the amendments did not infringe on the court's authority to enforce Atwood's sentence, which remained intact; all that was altered was "the term and place of imprisonment for certain violations." *Id*. at (¶8). As its rationale, the Court stated:

> "Defining crimes and prescribing punishments are exclusively legislative functions as a matter of constitutional law." *Parker v. State*, 119 So. 3d 987, 998 (Miss. 2013) (citations omitted). Circuit courts do not have inherent power to suspend a sentence or to impose a term of post-release supervision, nor do they have inherent power to revoke a term of post-release supervision and impose a period of imprisonment. "Before 1956 the circuit and county courts had no statutory authority to suspend sentences in felony cases." *Johnson v. State*, 925 So. 2d 86, 96 (Miss. 2006) (quoting *McDaniel v. State*, 356 So. 2d 1151, 1159 (Miss. 1978)). *See also Miller v. State*, 875 So. 2d 194, 199 (Miss. 2004) (noting that "post-release supervision" is a "statutory creature"); *Carter v. State*, 754 So. 2d 1207, 1208 (Miss. 2000) ("Miss. Code Ann. § 47-7-34 created the post-release supervision program [and] is a legislative creation. . . ."). This Court has recognized "that the legislature possesses the power to take away by statute what has been given by statute[.]" *Bd. of Trs. of State Insts. of Higher Learning v. Ray*, 809 So. 2d 627, 637 (Miss. 2002).

*Id*. at 846 (¶9). The Supreme Court found that the circuit court erred in finding the amendments unconstitutional and remanded Atwood's PCR motion for the circuit court to determine "the applicability of the amendments and for appropriate recommitment proceedings." *Id*. at 846-47 (¶10).

¶24. This Court has applied similar reasoning in another revocation of post-release supervision case, *White v. State*, 311 So. 3d 1278 (Miss. Ct. App. 2021). There White

15

pleaded guilty in December 2017 to possession of less than ten grams of methamphetamine with intent to sell. *Id*. at 1279 (¶1). The circuit court sentenced him to time served and seven years of post-release supervision, with five years reporting and two years non-reporting. *Id*. at (¶2). In January, 2018, White's probation officer filed a petition to revoke his PRS because White had failed to report for intake. *Id*. at (¶3). After a hearing in September 2018, the circuit court found that White had violated the terms of his PRS, ordered that White complete a drug rehabilitation program while incarcerated at a technical violation center, where he would be incarcerated until completion of the program or 180 days, whichever occurred first. *Id*. at 1280 (¶4). White was released from the technical violation center in February 2019. *Id*. at (¶5). In March 2019, White's probation officer filed another petition to revoke his PRS for failing to report upon being released. *Id*. at (¶6). In October 2019, at a hearing on the petition, the court questioned White and learned that White was homeless. *Id*. Thinking this was White's third revocation petition, the circuit court revoked White's PRS and imposed a term of five years of incarceration. *Id*. White filed a PCR motion that the circuit court denied without a hearing. *Id*. at 1281 (¶¶7-8). The circuit court relied on Mississippi Code Annotated section 47-7-37.1 (Rev. 2015), which provides that if a probationer commits a felony or absconds, his probation may be revoked. *Id*. at 1281-82 (¶8).

¶25. On appeal, we reversed, noting the changes in section 47-7-37:

> If the court revokes probation for one or more technical violations, the court shall impose a period of imprisonment to be served in either a [TVC] or a restitution center not to exceed ninety (90) days for the first revocation and not to exceed one hundred twenty (120) days for the second revocation. *For the*

16

*third revocation, the court may impose a period of imprisonment to be served in either a [TVC] or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence.*

*Id*. at 1282 (¶10).[9]    We held that "a court may impose the offender's full remaining suspended sentence for a "third revocation." *Id*.  Thus, the circuit erred in revoking his PRS on the second revocation hearing.  *Id*.  We further found that the record of the revocation proceeding was insufficient to support a finding that White had absconded. *Id*. at 1283 (¶13).

¶26.    In the case at hand, we are led to the inevitable conclusion that King's sentence was lawfully suspended.  Because he was placed on probation, section 47-7-37 applies to the determination of penalties should he violate his probation.  In other words, King's probation may be revoked and his sentence reinstated only upon his third technical violation. Moreover, the changes to the statute make it clear now that it is not the number of individual technical violations that determines the penalty but, rather,  the number of times a petition for revocation is filed, and King was found to have committed the alleged violations.  Because King's probation had only been revoked twice, under section 47-7-37(5)(a), the circuit court was not authorized to impose his full sentence upon him.  Accordingly, we reverse the circuit court's order dismissing King's PCR motion, vacate the revocation, and remand with instructions for the circuit court to enter an order that his probation be reinstated.

**Conclusion**

---

[9]  To be clear, section 47-7-7 provided graduated penalties for individual acts that violated a defendant's probation.  Thereafter the statute was amended to clarify that the penalties were incrementally stiffened not based on the number of *violations* per se, but on the number of *revocations*. *See* 2018 Miss. Laws ch. 416, § 11 (H.B. 387).  So, on the third revocation, the court was authorized to impose the original sentence.

¶27. King was statutorily barred from formally participating in the drug court because he was charged with and pled guilty to felonious child abuse. Because this was a crime of violence, he was not eligible. But the circuit court specifically placed King on probation, which means that section 47-7-37(5)(a) and its graduated penalties for technical violations applies. Because King's probation was revoked only twice for violations of drug court conditions, the circuit court was without authority to impose his full sentence. Therefore, the circuit court erroneously dismissed King's PCR motion. We reverse the circuit court's order dismissing King's PCR motion, vacate the order revoking King's probation, and remand with instructions to reinstate King's probation.[10]

¶28. **REVERSED, VACATED, AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WEDDLE AND ST. PÉ, JJ.; EMFINGER, J., JOINS IN PART.**

**LAWRENCE, J., DISSENTING:**

¶29. I respectfully disagree with the majority's approach to the resolution of this case. King was charged with and pled guilty to two crimes, child abuse (count one) pursuant to Mississippi Code Annotated section 97-5-39(2)(a) and child neglect (count two) pursuant to Mississippi Code Annotated section 97-5-39(1)(d). The trial court "specifically accepted" his guilty pleas. The judge sentenced King to serve forty years in the custody of the

---

[10] This instruction does not preclude the circuit court from reimposing King's sentence should King be found to have violated the terms of his probation a third time.

Mississippi Department of Corrections for count one and five years for count two, with the sentences set to run consecutively. The court then suspended all forty-five years and placed King in the district's drug court program.

¶30.    The judge determined that King "met all the criteria as set forth in the Drug Court Establishment Order recorded in the minutes of th[e] court." But make no mistake about it: this was an illegal sentence.[11] The Mississippi Code prohibits those who are convicted of or plead guilty to a **crime of violence** from participating in drug court. Miss. Code Ann. § 9-23-15(1)(a)-(b) (Rev. 2019).[12] "Felonious neglect, abuse or battery of a child as provided in

---

[11] "An illegal sentence is one that does not conform to the applicable penalty statute." *Phillips v. State*, 332 So. 3d 408, 411 (¶7) (Miss. Ct. App. 2022) (quoting *Grayer v. State*, 120 So. 3d 964, 969 (¶16) (Miss. 2013)).

[12] Specifically, the statute provides:

(1) In order to be eligible for alternative sentencing through a local intervention court, the participant must satisfy each of the following criteria:

> (a) The participant cannot have any felony convictions for any offenses that are crimes of violence as defined in Section 97-3-2 within the previous ten (10) years.
> **(b) The crime before the court cannot be a crime of violence as defined in Section 97-3-2.**
> (c) Other criminal proceedings alleging commission of a crime of violence cannot be pending against the participant.
> (d) The participant cannot be charged with burglary of a dwelling under Section 97-17-23(2) or 97-17-37.
> (e) The crime before the court cannot be a charge of driving under the influence of alcohol or any other drug or drugs that resulted in the death of a person.
> (f) The crime charged cannot be one of trafficking in controlled substances under Section 41-29-139(f), nor can the participant have a prior conviction for same.

Miss. Code Ann. § 9-23-15(1) (emphasis added).

19

Section 97-5-39" is classified as a crime of violence under Mississippi Code section 97-3-2 (Rev. 2014). The circuit judge took an oath of office to "discharge and perform all the duties incumbent upon" him, "**agreeably to** the . . . Constitution and **laws of the State of Mississippi**." Miss. Const. art. 6, § 155 (emphasis added). But the judge did not do so when sentencing King. The sentence was improper and illegal under Mississippi law, and the circuit judge erred by imposing it.

¶31. The appellate courts of this State have addressed illegal sentences before, but the present rule those cases created allows a judge to ignore the law and not be corrected. In *Chancellor v. State*, 809 So. 2d 700 (Miss. Ct. App. 2001), the defendant pled guilty to receiving stolen goods and received a five-year sentence, with four years suspended. *Id.* at 701 (¶2). Later, he was convicted of armed robbery and sentenced as a habitual offender to life imprisonment. *Id.* at (¶3). The defendant filed a PCR motion alleging he received an illegal sentence because "a sentence is not subject to suspension or probation when the defendant has prior felony offenses." *Id.* at 702 (¶7) (citing Miss. Code Ann. § 47-7-33) (Rev. 2000). This Court stated:

> Chancellor benefitted from the lenience of the lower court judge and would now like to argue that such leniency was a violation of his fundamental rights. If the error in sentencing Chancellor for receiving stolen goods is, in fact, an error at all, it is a harmless error rather than a fundamental one, and an error we might add that benefitted Chancellor. The law that states that there is a fundamental right to be free from an illegal sentence is interpreted to apply to sentences which cause the defendant to endure an undue burden rather than the luxury of a lesser sentence.

*Id.* at (¶8).

¶32. In a supreme court case, *Sweat v. State*, 912 So. 2d 458 (Miss. 2005), the defendant,

20

Sweat, had a previous felony conviction when he pled guilty to conspiracy to manufacture methamphetamine. *Id.* at 459 (¶2). Despite his prior felony, the judge sentenced him to serve "twenty years in the custody of MDOC, with twelve years suspended and five years of post-release supervision." *Id.* That sentence was, by definition, an illegal sentence under the existing law. The Mississippi Supreme Court granted certiorari review and "explicitly . . . h[e]ld that th[e appellate courts] must remand when the trial court commits reversible error but not when all that is required is modification of a sentence based on statutory provisions." *Id.* at 459, 461 (¶¶1, 8). The supreme court then acknowledged that "[g]enerally, where a convicted defendant receives an illegal sentence, the sentence must be vacated and the case remanded to the trial court for re[-]sentencing because the defendant suffered prejudice." *Id.* at (¶9) (citing *Robinson v. State*, 836 So. 2d 747 (Miss. 2002)). However, because Sweat "suffered no prejudice from the sentence of the trial court," the supreme court held that it was not required "to remand the case for resentencing." *Id.*

¶33. Conversely, though, the Mississippi Supreme Court faced a similar issue in *Foreman v. State*, 51 So. 3d 957 (Miss. 2011). Foreman was convicted of shooting into a vehicle and sentenced to serve ten years in the custody of the Mississippi Department of Corrections.[13] The relevant sentencing statute, however, clearly mandated five years as the statutory maximum for the crime. *Id.* at 961-62 (¶11) (citing Miss. Code Ann. § 97-25-47 (Rev. 2006)). The state conceded that he had been illegally sentenced. *Id.* Stating that "a defendant has a fundamental right to a legal sentence[,]" that court found Foreman's sentence

---

[13] Foreman was convicted of and sentenced for other crimes, but the only crime implicating an illegal sentence was shooting into a vehicle. *Id.* at 961-62 (¶¶11-13).

illegal and "vacate[d] the ten-year sentence imposed . . . and remand[ed] for resentencing." *Id.* at 962 (¶12) (citing *Ivy v. State*, 731 So. 2d 601, 603 (Miss. 1999); *Jefferson v. State*, 958 So. 2d 1276, 1281 (Miss. Ct. App. 2007)). Foreman's re-sentencing was a logical approach to the correction of an obvious legal error. It is the completely opposite resolution of Foreman's case compared to that of *Sweat* that troubles me. An illegal sentence is just that, whether it is severe or lenient. It should be treated as such.

¶34. The trial court in this case placed King in drug court even though he committed the violent crime of abusing a child when everyone else convicted of that crime would not be afforded the same sentence. That result is my concern. Trial judges should not be permitted or encouraged to fashion sentences contrary to the law. If we continue to turn a blind eye to it, it will continue to happen. Every citizen should know and expect that a trial judge must apply the law when fashioning criminal sentences. Granted, trial judges have a considerable amount of discretion, and I am not advocating for the removal of any of that discretion. But that discretion must be used in a manner consistent with the law. When one defendant is given a "lenient" illegal sentence, and another defendant (charged with the same crime) is given a sentence in compliance with the law, it creates negative and worrisome perceptions about the integrity of the criminal justice system. This Court is an "error-correction court[.]" *Bell v. State*, 168 So. 3d 1151, 1155-56 (¶22) (Miss. Ct. App. 2014). Discovering an illegal sentence and acting as though nothing happened not only allows judges to ignore the law of this State but does nothing to correct a serious legal error, which is our legal duty.[14] No

---

[14] I do not disparage the majority for following the law as we are required to do. I do point out my disappointment in prior precedent of our appellate court system for creating

precedent of this error-correction Court should ever encourage anyone to ignore the law, especially a judge who took an oath to follow that law. Trying to make an appellate determination about leniency (or not) leads to confusing appellate decisions that offer little guidance to trial courts.[15] More worrisome, it allows obvious legal decisions contrary to the law of this State to go uncorrected. I would remand for a legal sentence. Accordingly, I dissent.

**WEDDLE AND ST. PÉ, JJ., JOIN THIS OPINION. EMFINGER, J., JOINS THIS OPINION IN PART.**

---

this problem and not fixing it.

[15] A drug court program is not easy, but is it more or less lenient than a traditional sentence? It could be argued that it is *more* strict. It usually requires committing to years of no criminal activity of any nature, completing an education, working, and paying off fines and costs. Some programs require reading books, doing community projects, attending weekly meetings, and, of course, remaining drug free. Some defendants have begged to avoid drug court knowing that sitting in jail would be easier. The present appellate precedent holding illegal sentences harmless if lenient to a defendant offers confusing guidance instead of just insisting trial courts issue correct and legal sentences in compliance with the law.